BELLAMY, Appellee;  Cooper & Elliott, L.L.C., Appellant and Cross–Appellee,

v.

MONTGOMERY et al., Appellees and Cross–Appellants.

[Cite as *Bellamy v. Montgomery*, 188 Ohio App.3d 76, 2010-Ohio-2724.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 08AP–891

Decided June 15, 2010.

78

Cooper & Elliott, L.L.C., Charles H. Cooper Jr., and Rex H. Elliott, for appellant and cross-appellee Cooper & Elliott, L.L.C.

Chester, Willcox & Saxbe, L.L.P., and Pamela S. Krivda, for appellees and cross-appellants.

---

McGRATH, Judge.

{¶ 1} This appeal concerns sanctions imposed by the trial court pursuant to Civ.R. 37 on Cooper & Elliott, L.L.C. ("Cooper & Elliott"), the law firm employed by Frank E. Bellamy to represent him in an employment action filed on June 23, 2004, against defendants-appellees, Robert G. Montgomery, Brad Hennebert, and Franklin County (collectively referred to as "appellees"). Appellees also filed a cross-appeal regarding Cooper & Elliott's standing to challenge the dismissal of Bellamy's complaint on appeal, as well as the trial court's decision that denied appellees' motion for summary judgment.

{¶ 2} The requested discovery, which ultimately gave rise to the sanctions at issue, was the production of Bellamy's Ohio state and federal tax returns. Appellees first requested Bellamy's tax returns on July 1, 2004, to which Bellamy objected. On March 2, 2005, appellees made a second request for Bellamy's tax documents, which went unanswered. On April 7, 2005, appellees again sought to obtain Bellamy's tax documents by including a Civ.R. 30(B)(4) request when they noticed his deposition.[1] Bellamy appeared for his deposition but, still objecting to the production of his tax returns, he did not bring them with him.

{¶ 3} On April 29, 2005, appellees served a subpoena on the Tax Commissioner of Ohio. On May 6, 2005, Bellamy filed a motion for a protective order pursuant to Civ.R. 26(C) and a motion to quash the subpoena issued to the tax commissioner pursuant to Civ.R. 45(C). While Bellamy's motion to quash was pending, appellees filed a motion to compel. On July 8, 2005, the trial court issued a decision that denied Bellamy's motions and granted appellees' motion to compel. The court held that Bellamy's tax returns were discoverable and relevant to the subject matter involved in the action and ordered their production for the tax years from 1995 through 2005.

{¶ 4} On July 15, 2005, appellees received information from the tax commissioner in response to the subpoena. According to appellees, the information was incomplete in that the subpoena did not yield complete returns or, for some years, any returns. On July 17, 2005, counsel for appellees contacted Bellamy's counsel (Cooper & Elliott) and inquired as to the production of Bellamy's tax returns. Counsel for appellees was advised that Bellamy was "in the process of obtaining" documents responsive to their request. Bellamy eventually produced the cover sheets for his federal tax returns for 2001, 2002, and 2003, not the

---

1. This deposition was actually a continuance of Bellamy's first deposition.

returns themselves. Accompanying that production was a letter from Bellamy's counsel (Cooper & Elliott), which advised counsel for appellees that Bellamy had no further tax information in his possession.

{¶ 5} To facilitate production of Bellamy's complete tax returns, on September 12, 2005, appellees forwarded I.R.S. releases to Cooper & Elliott, requesting that Bellamy execute the same and return them along with a check for the I.R.S. Approximately five weeks later, Cooper & Elliott forwarded the executed releases to appellees' counsel but did not include the check for the I.R.S. On October 11, 2005, appellees filed a motion to show cause. On November 18, 2005, the trial court granted appellees' motion, and ordered Bellamy to produce his tax returns within 21 days (December 9, 2005). On December 7, 2005, Cooper & Elliott filed a notice with the court that there had been compliance with the court's order of November 18, 2005. Appellees filed a response to the foregoing on December 14, 2005, refuting Cooper & Elliott's claim of compliance.

{¶ 6} On January 5, 2006, the trial court issued a decision that, acting pursuant to Civ.R. 37(B), dismissed Bellamy's complaint and awarded appellees reasonable expenses, including attorney fees, caused by Bellamy's failure to comply with the court's previous orders entered on July 8 and November 18, 2005. The trial court explained its rationale, stating:

> The actions of Plaintiff's counsel have shown a pattern of deceit, neglect and negligence that is unacceptable to this Court. Plaintiff's counsel has been faced with the orders of this Court and has acted to stall and delay the progress of this case. All the while attempting to blame that delay on the actions of Defendants. As stated earlier, it was not Defendants who were ordered to retrieve the requested tax returns, it was Plaintiff. Being lawyers, Plaintiff's counsel are expected to be competent and knowledgeable of the Rules of Civil Procedure. Pursuant to these rules, Plaintiff's counsel should be aware that sanctions can be imposed against them for their failure to comply with them and their failure to comply with direct Court orders. Plaintiff's counsel has ignored these rules and for almost six months has been violating the direct orders of this Court. These violations will no longer be tolerated. Therefore, this Court imposes the sanctions of dismissal of Plaintiff's Complaint, and the awarding to Defendants of reasonable expenses, including attorney's fees, caused by Plaintiff['s] failures.

The trial court concluded by ordering a hearing to be held before a magistrate to determine the amount of expenses to be awarded to appellees, "along with the level of responsibility for them of Plaintiff and his counsel."

{¶ 7} A hearing pursuant to the above order was held on October 6, October 30, and November 15, 2006, before a visiting judge.[2] Although the trial court's

---

**2.** At the time of this hearing, Cooper & Elliott were no longer representing Bellamy, having withdrawn in August 2006. Bellamy did not attend that hearing.

order referred the determination of expenses to a magistrate, no party objected to a visiting judge presiding over the matter. Evidence presented at the hearing included appellees' counsel's billing invoices, as well as testimony from Lew Clark, who served as appellees' expert regarding the reasonableness of appellees' counsel's fees and expenses. The parties stipulated to Clark's qualifications as an expert witness, as well as appellees' counsel's hourly fee and her qualifications as a labor and employment attorney.

{¶ 8} On September 9, 2008, the visiting judge issued his finding of facts and conclusions of law ("the visiting judge's opinion").[3] Therein, he determined that appellees' total expenditure related to the tax-return matter totaled $41,982.77, and that that amount was reasonable and supported by the evidence presented at the hearing, i.e., appellees' counsel's billing invoices and Clark's expert testimony. With respect to the apportionment of that amount between Bellamy and Cooper & Elliott, the visiting judge relied upon federal case law to impose joint and several liability. The foregoing was journalized in an entry on October 7, 2008.

{¶ 9} Cooper & Elliott appeals, advancing the following four assignments of error:

1. The trial court erred in imposing the extraordinary sanctions of dismissal and monetary sanctions for plaintiff Frank Bellamy's delay in producing of his tax returns.

2. The trial court erred in granting sanctions against Cooper & Elliott, LLC.

3. The visiting judge to whom the case was transferred erred in issuing a judgment entry adopting his own "recommended findings of fact and conclusions of law" because while the sanctions proceeding was pending the judge to whom the case was originally assigned re-claimed the case, thus divesting the visiting judge of jurisdiction to enter a final judgment over the case.

4. The trial court erred by awarding excessive and unjustified monetary sanctions.

{¶ 10} Appellees filed a notice of cross-appeal and advance one assignment of error as follows:

The trial court erred in denying summary judgment as to plaintiff Frank E. Bellamy Sr.'s claims.

■ {¶ 11} In its first assignment of error, Cooper & Elliott asserts that the trial court abused its discretion when it dismissed Bellamy's complaint and imposed sanctions pursuant to Civ.R. 37(B). To the extent that Cooper & Elliott is appealing the dismissal of Bellamy's complaint, we find that it does not have

---

**3.** Illness was the reason for the delay between the hearing, which was held in 2006, and the issuance of the visiting judge's opinion in 2008.

standing to do so as it was not the party aggrieved by that action of the trial court. See, e.g., *Midwest Fireworks Mfg. Co., Inc. v. Deerfield Twp. Bd. of Zoning Appeals* (2001), 91 Ohio St.3d 174, 177, 743 N.E.2d 894 (an appeal lies only on behalf of a party aggrieved by the final order appealed from). Cooper & Elliott does, however, have standing to challenge the imposition of sanctions upon the firm. *Lemaster v. Bank One Columbus, N.A.* (Aug. 25, 1998), 10th Dist. No. 98AP-2, 1998 WL 542699. Accordingly, we overrule Cooper & Elliott's first assignment of error. In addition, the limited scope of Cooper & Elliott's appeal renders appellees' cross-appeal moot.

{¶ 12} In its second assignment of error, Cooper & Elliott argues that the visiting judge erred by imposing joint and several liability for the sanctions awarded pursuant to Civ.R. 37. A trial court has broad discretion when ruling upon a motion for sanctions under Civ.R. 37(B). *State ex rel. Citizens for Open, Responsive & Accountable Govt. v. Register,* 116 Ohio St.3d 88, 2007-Ohio-5542, 876 N.E.2d 913, ¶ 18. Absent an abuse of that discretion, an appellate court will not reverse the imposition of a discovery sanction. *Nakoff v. Fairview Gen. Hosp.* (1996), 75 Ohio St.3d 254, 662 N.E.2d 1, syllabus. "The term 'abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 13} In this case, the trial court awarded sanctions pursuant to Civ.R. 37(B)(2), which provides:

(2) If any party or an officer, director, or managing agent of a party or a person designated under Rule 30(B)(5) or Rule 31(A) to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under subdivision (A) of this rule and Rule 35, the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

* * *

In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court expressly finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

{¶ 14} As noted in the visiting judge's opinion, there does not appear to be an Ohio court that has imposed joint and several liability for sanctions awarded pursuant to Civ.R. 37, although the express language of the rule clearly contemplates such a result. Thus, given the similarity between Civ.R. 37(B)(2) and Fed.R.Civ.P. 37(b)(2)(C), guidance from federal law can be instructive. *First*

*Bank of Marietta v. Mascrete, Inc.* (1997), 79 Ohio St.3d 503, 508, 684 N.E.2d 38. We further note that the independent research of this court disclosed relatively few cases in which federal courts have imposed sanctions jointly and severally under Fed.R.Civ.P. 37(b)(2).

{¶ 15} Fed.R.Civ.P. 37(b)(2)(C) provides:

Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Much like Civ.R. 37, Fed.R.Civ.P. 37 authorizes a court to order a party and/or his counsel to pay reasonable expenses, including attorney fees, incurred as a result of noncompliance with a discovery order. See, e.g., *Thomas E. Hoar, Inc. v. Sara Lee Corp.* (C.A.2, 1990), 900 F.2d 522; *Goldman v. Alhadeff* (D.C.Wa. 1990), 131 F.R.D. 188; *Chesa Internatl., Ltd. v. Fashion Assoc., Inc.* (S.D.N.Y. 1977), 425 F.Supp. 234.

{¶ 16} "When [federal] courts have assessed attorney's fees against counsel for a party for the latter's violation of discovery requirements under Rule 37, the attorney has had 'a high degree of culpability.'" *Inter–Trade, Inc. v. CNPq–Conselho Nacional De Desenvolvimento Cientifico e Tecnologico* (D.C.2000), 761 A.2d 834, 839, quoting *Crawford v. Am. Fedn. of Govt. Emps.* (D.D.C.1983), 576 F.Supp. 812; see also *Chesa Internatl., Ltd.,* at 238 (sanctions imposed upon attorney when the attorney was found to have "contributed significantly to the pattern of delay and defiance"); *First Am. State Bank v. Continental Ins. Co.* (C.A.8, 1990), 897 F.2d 319 (sanctions imposed upon attorney upheld when attorney instructed the client to produce irrelevant documents and not to produce responsive documents, and, as such, attorney was at fault for the noncompliance). Federal courts have also construed Fed.R.Civ.P. 37 as treating clients and counsel separately. *Weisberg v. Webster* (C.A.D.C.1984), 242 U.S.App.D.C. 186, 749 F.2d 864, 873–874.

{¶ 17} The degree of culpability associated with the imposition of joint and several liability for sanctions has been described as a showing of a "coordinated effort" between client and counsel. *AAIPharma, Inc. v. Kremers Urban Dev.* (Oct. 31, 2006), S.D.N.Y. No. 02 Civ. 9628, 2006 WL 3096026. Another court, whose position has been embraced, opined that "an award ought to be made against the attorney only when it is clear that discovery was unjustifiably opposed principally at his instigation." *Humphreys Exterminating Co., Inc. v. Poulter* (D.Md.1974), 62 F.R.D. 392, 395.

{¶ 18} The approach generally taken by the federal courts, which is that a high degree of culpability must be shown before assessing sanctions against an

attorney for a client's discovery violation, comports with the "warning language" found in Fed.R.Civ.P. 37(b)(2)(C) that an attorney who is "advising" his client may be sanctioned for his client's discovery violation. The language contained in Civ.R. 37(B)(2) is virtually identical. See Civ.R. 37(B)(2) ("the party failing to obey the order or the attorney advising him or both"). Indeed, both Civ.R. 37(B)(2) and its federal counterpart appear to require an attorney to actively participate and, at least in part, cause the client's noncompliance with a discovery order.

{¶ 19} With respect to appellate review, much like any other issue, a trial court must adequately explain its reasoning for imposing sanctions directly against an attorney. In *Weisberg*, the court of appeals for the District of Columbia explained:

> The requirement of specific findings is found in many of our cases dealing with sanctions under Rule 37. For example, Judge Burger's concurrence in *Von der Heydt v. Rogers* [(C.A.D.C. 1958), 251 F.2d 17, 18] suggested that this Court rely on its "inherent power to call for findings in aid of appellate review" to remand to the district court for findings in a case involving failure to produce certain documents. That same action was taken in *Smith v. Schlesinger* [(C.A.D.C.1975), 509 F.2d 538]. In *Crawford v. American Federation of Government Employees* [(D.D.C.1983), 576 F.Supp. 812, 815] the District Court for the District of Columbia adopted the view that an award of costs under Rule 37 against an attorney ought to be justified by reasons distinct from those justifying an award against the client. Several other cases have either remanded for a specific division of liability between attorney and client, or affirmatively explained the rationale for imposing an award against the attorney. [See, e.g., *United States v. Sumitomo Marine & Fire Ins. Co.* (C.A.9, 1980), 617 F.2d 1365.]
>
> This requirement of findings to support an award of expenses against an attorney is prompted by the structure of Rule 37, by concerns for effective appellate review, and by concerns for the tension created in the attorney-client relationship when the attorney is subject to personal liability.
>
> Rule 37 places the responsibility of apportioning awards of expenses between client and counsel with the trial court. The trial court is in the best position to judge how much responsibility is due to the client's recalcitrance and how much to the lawyer's condonance or participation in the client's disobedience. In the present case, although the District Court may have analyzed such factors and reached a well-founded conclusion, no such analysis was presented in any opinion. Accordingly, on the question of the proper division, if any, of the liability for expenses between Weisberg and Lesar, we remand to the trial court for more complete findings.

(Footnotes omitted.) Id., 749 F.2d at 874. We find that this position is sound and that it promotes effective appellate review.

{¶ 20} Applying *Weisberg,* and the cases cited therein, to the *specific* facts of this case, we find that the visiting judge's opinion entered on September 9, 2008, falls somewhat short of the specificity discussed in *Weisberg.* In the trial court's decision of January 5, 2006, the court admonished Cooper & Elliott, stating that its actions "show[ed] a pattern of deceit, neglect and negligence," which "acted to stall and delay the progress of [the] case." The trial court, however, did not identify the individual acts that formed the pattern as a whole. While those acts may be found elsewhere in the record, they are absent from the specific opinion that directed the visiting judge to determine the level of responsibility as between Bellamy and Cooper & Elliott. The visiting judge, who presided over the hearing, imposed joint and several responsibility for the amount of sanctions awarded and cited several actions taken by Cooper & Elliott during the course of discovery to support his determination. While the visiting judge's opinion provides slightly more detail than the trial court's decision, it does not indicate "how much responsibility [was] due to [Bellamy's] recalcitrance and how much [was caused by Cooper & Elliott's] condonance [sic] or participation in [Bellamy's] disobedience." *Weisberg,* 749 F.2d at 874. In other words, when applying the approach taken by the federal courts, we are forced to conclude that the visiting judge's opinion does not contain enough detail for this court to provide a meaningful appellate review. That is not to say, however, that the visiting judge (or the trial court for that matter) did not engage in such an analysis, only that the same was not contained in the record. Thus, we find it proper to remand the matter for more complete findings as to Cooper & Elliott's level of responsibility, if any.

{¶ 21} The issue presented by this appeal appears to be one of first impression for Ohio courts. Civ.R. 37 vests courts with the authority to sanction parties and their attorneys for flouting the Rules of Civil Procedure and violating discovery orders, and we agree that joint and several liability is one method by which a court may impose sanctions. We are also cognizant of how attorney-client relationships may sometimes break down, and we quote with approval the *Inter–Trade, Inc.* court's position that "[i]t is fair to hold individuals accountable for their own conduct. A lawyer cannot always control the actions of a client, and it would be unfair to hold the lawyer accountable for them, unless it appeared that he or she had some responsibility for the client's recalcitrance." *Inter–Trade, Inc.,* 761 A.2d at 839.

{¶ 22} Keeping all practical, legal, and public-policy considerations in mind, the fact patterns of the federal cases that have imposed joint and several liability for sanctions have generally involved egregious conduct by attorneys.

The imposition of joint and several liability can translate to being a harsh sanction but, if warranted, a wholly appropriate sanction. Thus, given the fact patterns reviewed by this court, it is our position that a trial court must support the imposition of joint and several liability with detailed findings and analysis, which includes an apportionment of responsibility. In this case, we find that apportioning liability between Bellamy and Cooper & Elliott is not only proper based on the specific facts of this case, but also based on our decision in *Estep v. Kasparian* (1992), 79 Ohio App.3d 313, 607 N.E.2d 109, in which we held that the burden of sanctions imposed for frivolous conduct should fall upon those actually responsible for the frivolous conduct.

{¶ 23} While it is not our intent to further overburden the trial court, based on the considerations discussed above, we remand the matter for more complete findings as to Cooper & Elliott's level of responsibility, if any. Accordingly, we sustain Cooper & Elliott's second assignment of error.

{¶ 24} In its third assignment of error, Cooper & Elliott asserts that the visiting judge lacked jurisdiction to journalize the final judgment entry entered on October 7, 2008. We find this argument to be without merit. Visiting judges have jurisdiction to enter final judgments on matters referred to them. The fact that the visiting judge's opinion was styled "Recommended Findings of Fact and Conclusions of Law" did not somehow divest the judge of his jurisdiction to enter judgment, and Cooper & Elliott cite no case law or rule of procedure that suggests otherwise. Moreover, Cooper & Elliott never objected to a visiting judge presiding over the matter, whether before the hearing took place or after the visiting judge issued his opinion. Accordingly, we overrule Cooper & Elliott's third assignment of error.

{¶ 25} In its fourth assignment of error, Cooper & Elliott argues that the amount of reasonable expenses and attorney fees awarded to appellees was excessive. Specifically, Cooper & Elliott contends that there is no justification for awarding fees or expenses before July 8, 2005, the first date that the trial court ordered production of Bellamy's tax returns, or after November 18, 2005, the date upon which the trial court issued the show-cause order.

{¶ 26} A trial court must determine reasonable attorney fees upon the actual value of the necessary services performed by the attorney, with evidence in existence in support of the court's determination. *In re Hinko* (1992), 84 Ohio App.3d 89, 95, 616 N.E.2d 515. In making that determination, some of the factors to be considered include "1) time and labor, novelty of issues raised, and necessary skill to pursue the course of action; 2) customary fees in the locality for similar legal services; 3) result obtained; and 4) experience, reputation and ability of counsel." *Pyle v. Pyle* (1983), 11 Ohio App.3d 31, 35, 11 OBR 63, 463

N.E.2d 98; see also *Papadelis v. Charter One Bank*, 8th Dist. No. 84581, 2005-Ohio-288, 2005 WL 174764. A court should then calculate the number of hours reasonably expended and multiply that sum by a reasonable hourly fee. See *Bittner v. Tri–County Toyota, Inc.* (1991), 58 Ohio St.3d 143, 569 N.E.2d 464.

{¶ 27} In this case, the evidence before the visiting judge included the testimony of appellees' expert witness, Mr. Clark, and appellees' billing invoices. The parties stipulated to Clark's qualifications as an expert witness, as well as the reasonableness of appellees' counsel's hourly fee. In his opinion, the visiting judge rejected the same argument that Cooper & Elliott advances herein and noted that "Cooper & Elliott did not argue that any of the hours involved for a particular activity performed were excessive, with the single exception of a footnote containing their unsupported personal opinion that one particular charge for 14.75 hours 'seems excessive.' " In reaching the amount of the award, the visiting judge looked to the factors found in Prof.Cond.R. 1.5, as well as case law cited below, and provided an analysis that applied these considerations. The visiting judge concluded his analysis by explaining:

Defendant's expert testified that *all* the time and charges he reviewed were reasonable. Thus, it makes no difference that some of the time and charges reviewed by the expert were later redacted. The expert reviewed and found all time expended to be reasonable. Cooper & Elliott have stipulated to the reasonableness of Defendants' counsel's hourly rate for this case. With the single exception mentioned above, they do not argue that Defendants' counsel spent excessive time on any particular item or activity. Rather, it appears that Cooper & Elliott simply seek to reduce the amount expended by any means. This Court has reviewed the time spent on each activity and finds that the time spent after October 6 was reasonable and appropriate time spent on this matter.

Defendants submitted and supported a total of $41,982.77 in attorney fees related to Plaintiff's and his counsel's failure to produce tax returns and failure to obey the Court's orders to do so. Cooper & Elliott stipulated to the reasonableness of the hourly rate charged and to the expertise of Defendants' counsel. Expert testimony established that the case contained novel issues, consumed a good deal of the lawyers' time, and that the time expended on activities related to this matter was reasonable. Accordingly, the Court awards to Defendants the amount of $41,982.77.

Thus, based on the expert testimony provided by Mr. Clark, as well as appellees' counsel's billing invoices, the visiting judge found that appellees "submitted and supported a total of $41,982.77 in attorney fees related to [Bellamy's] and his counsel's failure to produce tax returns and failure to obey the Court's orders to do so."

{¶ 28} Civ.R. 37(B)(2) specifically states that the court may order "the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, *caused by the failure*," to obey the order. (Emphasis added.) Civ.R. 37(B)(2). Fees incurred prior to a court's order cannot be "caused by the failure" to obey that order. See, e.g., *Wrinch v. Miller*, 183 Ohio App.3d 445, 2009–Ohio–3862, 917 N.E.2d 348, ¶ 44.

{¶ 29} In this case, the trial court issued its first order on July 8, 2005. When considering the visiting judge's decision in light of appellees' billing records, it seems that the amount awarded may include fees prior to the court's order of July 8, 2005, as well as fees not caused by the failure of Bellamy and Cooper & Elliott to obey that order. For example, it appears that the billings include time spent for drafting appellees' original discovery requests in December 2004, when a discovery dispute did not yet exist. The billings also include time spent pursuing discovery prior to the July 8, 2005 order. Accordingly, we sustain Cooper & Elliott's fourth assignment of error and remand the matter to the trial court for further proceedings to limit an award of fees to those incurred as a result of Bellamy's and Cooper & Elliott's failure to obey the court's order of July 8, 2005, and all subsequent related orders.

{¶ 30} Based on the foregoing, we overrule Cooper and Elliott's first and third assignments of error and sustain Cooper & Elliott's second and fourth assignments of error. Appellees' cross-appeal is rendered moot based on the disposition of Cooper & Elliott's first assignment of error. The disposition of the matters presented in this appeal renders all pending motions moot and, as such, they are hereby denied. Accordingly, the judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this matter is remanded to the trial court for further proceedings to limit an award of fees to those incurred as a result of Bellamy's and Cooper & Elliott's failure to obey the court's order of July 8, 2005, and all subsequent related orders.

Judgment accordingly.

KLATT, J., concurs.

FRENCH, J., concurs in part, dissents in part, and concurs in judgment.

FRENCH, Judge, concurring in part, dissenting in part, and concurring in judgment.

{¶ 31} I respectfully disagree with the majority's conclusion that the trial court failed to explain adequately its decision to impose joint and several liability upon Bellamy and Cooper & Elliott. In my view, the visiting judge's decision, together with the trial court's two prior decisions, provide detail sufficient for our review. The majority's new and broad rule, which requires a trial court to support the

imposition of joint and several liability with more detailed findings and analysis that includes an apportionment of responsibility between lawyer and client, is unnecessary, given the substantial record and evidence in this case.

{¶ 32} Nevertheless, I concur in the majority's judgment to remand this matter to the trial court because I agree that the amount of fees awarded to appellee was excessive. I also agree with the majority in all other respects. Therefore, I respectfully concur in part, dissent in part, and concur in the final judgment to remand this matter to the trial court.