[Cite as *Barrow v. Living Word Dayton*, 2021-Ohio-141.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| SAMUEL BARROW | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 28719 |
| | : | |
| v. | : | Trial Court Case No. 2017-CV-2301 |
| | : | |
| LIVING WORD DAYTON, et al. | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendants-Appellees | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 22nd day of January, 2021.

. . . . . . . . . . .

JOHN R. FOLKERTH, Atty. Reg. No. 0016366, 3033 Kettering Boulevard, Point West II, Suite 111, Dayton, Ohio 45439
      Attorney for Plaintiff-Appellant

BRYAN J. MAHONEY, Atty. Reg. No. 0071367 and LISA A. HESSE, Atty. Reg. No. 0042120, 1 South Main Street, Suite 1800, Dayton, Ohio 45402 and J. STEVEN JUSTICE, Atty. Reg. No. 0063719, 210 W. Main Street, Troy 45373
      Attorneys for Defendants-Appellees

. . . . . . . . . . . . .

HALL, J.

{¶ 1} Samuel Barrow appeals from an order of the Montgomery County Court of Common Pleas that requires him and his attorney, jointly and severally, to pay attorney fees to the defendants as a discovery sanction. We affirm.

## I. Factual and Procedural Background

{¶ 2} In May 2017, Barrow, an alleged author and former member of The Living Word-Dayton church, filed this lawsuit against Living Word, M. Patrick Murray, and Jackie Murray alleging numerous claims, including tortious interference with a business relationship, defamation, invasion of privacy, intentional infliction of emotional distress, and civil conspiracy. We will refer to the defendants collectively as "Living Word." The factual allegations underlying Barrow's claims are not relevant to this appeal. Suffice it to say that Living Word denies all of Barrow's claims.

{¶ 3} This appeal is about a discovery dispute, which began in December 2017 when Living Word filed a motion to compel Barrow to produce emails in their "native electronic format." Barrow had identified in his discovery responses 68 witnesses as having information relevant to his claims and also acknowledged having multiple email accounts. Living Word proposed that Barrow provide his email accounts and passwords to its expert, Binary Intelligence, which would download all of his emails and then search them for the names of the witnesses that Barrow had identified. The responsive emails would then be reviewed for relevance and the likelihood of leading to the discovery of admissible evidence. The trial court granted Living Word's motion to compel and ordered production of the emails following Living Word's proposed procedure. Barrow appealed, and we reversed the order and remanded, concluding that the trial court's order was

overbroad and provided no procedures to identify emails that may be covered by the attorney-client privilege and to protect them against production. *See Barrow v. The Living Word-Dayton*, 2d Dist. Montgomery No. 27935, 2018-Ohio-4641.

{¶ 4} On remand, the parties came to an agreement on a production method that would protect emails that may be covered by the attorney-client privilege. On December 14, 2018, the trial court entered the agreed discovery order ("Stipulated Confidentiality and Protective Order and Protocol for Production of Plaintiff Barrow's Emails"). Under the order, Binary Intelligence, at Living Word's expense, would search all of Barrow's emails in two stages. The first stage involved a search for the names of the attorneys on a list provided by Barrow. The responsive emails would be given to Barrow's counsel who would review them for privilege. The emails deemed privileged would be listed in a privilege log, along with certain information specified in the discovery order. The non-privileged emails would be produced. After the potentially privileged emails were culled, Binary Intelligence would then search all the remaining emails a second time for any of the terms on a list provided by Living Word. The list was based on Barrow's discovery responses and mostly included the names of the 68 people whom he had identified as having information relevant to his claims. Living Word provided the list of terms to Barrow's counsel, who noted no objection.

{¶ 5} Living Word had no idea how many emails were in Barrow's email accounts or how many emails would be responsive to the searches. The first search, for the attorney names, produced around 3,200 emails, about 2,700 of which Barrow's counsel identified as privileged. The second search, for Living Word's list of terms, produced over 50,000 emails. The day after Barrow's counsel received these emails from Binary

Intelligence, he emailed Living Word's counsel that the search terms produced too many emails and that the terms needed to be refined to reduce the volume. Counsel for Living Word responded the same day and suggested that Barrow could amended his discovery responses to reduce the number of names and therefore the number of search terms. Over two weeks later, Barrow's counsel emailed counsel for Living Word refusing to amend the discovery responses and insisting that Living Word refine the search terms to search for only "material" (rather than relevant) discoverable information. Barrow's counsel also told Living Word that Barrow refused to review any emails created before 2013, asserting that they could not possibly be relevant. Living Word suggested various alternatives to deal with the volume of emails, such as extensions of time to conduct the review and producing emails on a rolling basis, i.e., in batches with set deadlines for production. Living Word also suggested that Barrow could turn over the emails for it to review with a claw-back provision should any inadvertent disclosures occur. Barrow's counsel did not respond to any of these suggestions.

{¶ 6} Finally, on March 29, 2019, Living Word filed a motion for sanctions. It claimed that Barrow (1) refused to provide a sufficiently detailed privilege log as the order required for claimed attorney-client-privileged emails; (2) refused to provide any emails created before 2013; (3) refused to review the emails responsive to the second search; (4) refused to produce any the second-search emails; and (5) failed to respond to reasonable alternatives suggested by Living Word to informally resolve the dispute. A hearing was held in May 2019. Barrow admitted that he had not reviewed any of the 50,000 emails. He said that he had glanced at the list and concluded that it was overwhelming. He repeatedly asserted that the search was not a real search: "I don't think

they really did a search." (Tr. 58.) Barrow said that "the search terms have been constructed in a way so as to not actually constitute a legitimate basis for search." (*Id.* at 42.) Further, he stated, "I've been more than willing to comply if it was a real search." (*Id.* at 59.) With respect to pre-2013 emails in particular, Barrow was asked why he refused to review them. He responded, "I did not even * * * know the defendant during that time and it wasn't relevant to this particular action at all." (*Id.* at 55.) Living Word explained to the trial court that pre-2013 emails could be relevant for two reasons: one, it had asserted a counterclaim for vexatious litigation that spanned a period of 20 years; and two, Barrow was allegedly developing his skill as a "world class author," was involved with the Living Word church, and was communicating with the witnesses identified in his discovery responses as early as 2010.

{¶ 7} On June 19, 2019, the trial court sustained Living Word's motion for sanctions. The court found Barrow, individually,[1] in contempt for willfully failing to comply with the December 2018 agreed discovery order. Further, the court determined that the failure to comply "was not substantially justified and an award of attorney fees is just." The following August, a hearing was held on the amount of the attorney fees. On January 27, 2020, the trial court ordered Barrow and his counsel, jointly and severally, to pay Living Word attorney fees of $11,835.

{¶ 8} Barrow appeals.

## II. Analysis

---

1 "This Court finds that Plaintiff Mr. Barrow has willfully failed to comply with the Court's Order of December 14, 2018. * * * This Court concludes that Plaintiff's failure to abide by the December 14, 2018 Order to which he agreed is in fact contemptable." Decision, Entry and Order, June 19, 2019.

{¶ 9} Barrow raises three assignments of error, which challenge the finding that he failed to comply with the discovery order, the finding of contempt and awarding of sanctions, and the award of attorney fees.

{¶ 10} "Our review of a trial court's order granting sanctions for failing to comply with the discovery rules is based on an abuse-of-discretion standard. A trial court has broad discretion to fashion an appropriate sanction for a party's failure to comply with the discovery rules." *Yellowbook, Inc. v. L. Patrick Mulligan & Assocs.*, 2d Dist. Montgomery No. 26090, 2014-Ohio-4698, ¶ 7, citing *Nakoff v. Grandview Gen. Hosp.l,* 75 Ohio St.3d 254, 662 N.E.2d 1 (1996), syllabus. "This is a 'highly deferential standard of review,' and 'we will not lightly substitute our interpretation for that of the issuing court.' " *Barton v. Barton*, 2017-Ohio-980, 86 N.E.3d 937, ¶ 98 (2d Dist.), citing *State ex rel. Cincinnati Enquirer v. Hunter*, 138 Ohio St.3d 51, 2013-Ohio-5614, 3 N.E.3d 179, ¶ 29.

### A. Failure to obey the discovery order

{¶ 11} The first assignment of error alleges:

THE TRIAL COURT ERRED BY FINDING THAT MR. BARROW FAILED

TO COMPLY WITH THE COURT'S PROTECTIVE ORDER.

{¶ 12} The record shows that the trial court had good reason to find that Barrow failed to obey the discovery order. The scope of the discovery order encompassed all emails that contained at least one of the search terms on the list supplied by Living Word. Barrow admitted that he had refused to review any emails created before 2013. He further admitted that he had refused to review any of the search-term emails.

{¶ 13} Barrow plainly failed to comply with the court's discovery order. The order did not give Barrow discretion as to which emails to review. If he thought that compliance

would be an undue burden or expense, he should have brought that to the trial court's attention. Instead, Barrow simply disregarded what the order required him do.

{¶ 14} The first assignment of error is overruled.

### B. Contempt and sanctions

{¶ 15} The second assignment of error alleges:

THE TRIAL COURT ERRED BY AWARDING SANCTIONS AGAINST MR.

BARROW AND HIS COUNSEL.

{¶ 16} Civ.R. 37(B)(1)(g) states that, if a party fails to obey a discovery order, the court may issue an order treating the failure to obey as contempt of court. And Civ.R. 37(B)(3) requires the court to order payment of attorney fees "unless the failure was substantially justified or other circumstances make an award of expenses unjust." *See Action Group, Inc. v. NanoStatics Corp.*, 10th Dist. Franklin No. 13AP-72, 2013-Ohio-5542, ¶ 68 (stating that "a court is generally required to order the party who fails to obey a discovery order to pay the opposing party's reasonable expenses, including attorney fees," the only exceptions being "if the court finds that the uncooperative party's actions are substantially justified or other circumstances make the award unjust"). Absent one of these exceptions, "[w]hen noncompliance with the discovery rules is established, a court abuses its discretion when it fails to award attorney fees." *Yellowbook*, 2d Dist. Montgomery No. 26090, 2014-Ohio-4698, at ¶ 8, citing *Mays v. Dunaway,* 2d Dist. Montgomery No. 19922, 2003-Ohio-6900.

{¶ 17} Here, in its June 19, 2019 decision, the trial court found that Barrow had "willfully failed to comply" with the discovery order and that the failure to comply with the order to which Barrow had agreed was "contemptable." The trial court further found that

the failure to comply was not substantially justified and that an award of attorney fees was just.

{¶ 18} The record amply supports these findings. Living Word first sought Barrow's discoverable emails in 2017. Finally, a year later, the parties agreed to a discovery procedure for them. Barrow knew how many emails he had; Living Word had no idea. When Barrow learned how much work would be required, he simply refused to follow the procedure—the procedure he had agreed to. But he did not say anything to the trial court about it until Living Word filed its motion for sanctions, which was over a year after Living Word had first sought the emails. Barrow did not object to Living Word's list of search terms. And when he learned just how many emails he would have to review, he did not ask the court to modify the discovery order. Moreover, Barrow did not respond to Living Word's suggestions of alternative ways to comply or offer his own suggestions.

{¶ 19} The discovery order did not give Barrow the option to review only a portion of his emails. "[I]n disobeying a court order, he took the risk that the court would disagree with his choice." *Passage v. Passage*, 2d Dist. Greene No. 2013-DR-190, 2016-Ohio-1097, ¶ 21. As we have already said, if Barrow thought that compliance would be an undue burden or expense, and that Living Word's suggested alternatives were unworkable, he should have brought the matter to the trial court. "What he could not do was to unilaterally disregard the prior court order." *Id.* at ¶ 23.

{¶ 20} As for the trial court's decision to make Barrow's counsel jointly and severally liable for attorney fees, despite the fact that the contempt finding did not extend to Barrow's attorney, Civ.R. 37(B)(3) gives courts the authority to sanction an attorney for a failure to comply with a discovery order. It states: "Payment of Expenses. Instead of or

in addition to the orders above, the court shall order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." As the Tenth District has said, "Civ.R. 37 vests courts with the authority to sanction parties and their attorneys for flouting the Rules of Civil Procedure and violating discovery orders, and * * * joint and several liability is one method by which a court may impose sanctions." *Bellamy v. Montgomery*, 188 Ohio App.3d 76, 2010-Ohio-2724, 934 N.E.2d 403, ¶ 21 (10th Dist.). Here, the trial court noted in its January 27, 2020 decision that it had found Barrow in contempt for failing to comply with the discovery order. In addition, the court pointed out that Barrow's counsel "continues to fuel the fire by arguing in his post hearing brief that 'The transparent motive of the Living Word Defendants to conduct this quest for sanctions is to maneuver Mr. Barrow into sanctions, with the ultimate objective of obtaining the dismissal of Mr. Barrow's lawsuit other than on the merits.' " The court also noted that counsel called Living Word's conduct " 'tactics' that are 'disingenuous and a pretext to seek sanctions.' " The court found it "especially egregious" that counsel still blamed Living Word for Barrow's conduct, which the court had already found was contemptable. While the court expressed reluctance to impose joint and several liability on counsel, it said that "Barrow's statements are in fact fueled by his counsel's continued effort to blame Defendants for Plaintiffs failure to abide by a Court Order."

{¶ 21} We cannot say that the trial court abused its discretion by imposing sanctions jointly and severally on both Barrow and his counsel.

{¶ 22} The second assignment of error is overruled.

## C. Award of attorney fees

{¶ 23} The third assignment of error alleges:

THE TRIAL COURT'S AWARD OF SANCTIONS IS UNJUST AND EXCESSIVE.

{¶ 24} "The trial court must determine, as a factual finding, an amount that will reasonably compensate the moving party for its reasonable expenses in pursuing a justifiable order of sanctions." *Yellowbook*, 2d Dist. Montgomery No. 26090, 2014-Ohio-4698, ¶ 10, citing *Bellamy,* 188 Ohio App.3d 76, 2010-Ohio-2724, 934 N.E.2d. 403.

{¶ 25} Here, the trial court awarded Living Word $11,835 in attorney fees "based upon the evidence presented." At the hearing on attorney fees, Living Word presented expert testimony and exhibits supporting the reasonableness of the fees awarded. Upon review, we conclude that the amount of the award is well-supported by the evidence and was not an abuse of discretion. *See Barton*, 2017-Ohio-980, 86 N.E.3d 937, at ¶ 99 (concluding that the contempt finding and award of reasonable fees were well-supported by the evidence and were not an abuse of discretion where expert testimony as the reasonableness of the fees incurred was presented).

{¶ 26} The third assignment of error is overruled.

### III. Conclusion

{¶ 27} We have overruled each of the assignments of error presented. The trial court's judgment is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J., concurs.

FROELICH, J., concurs in part and dissents in part:

{¶ 28} I concur in the affirmance of the finding of contempt against Barrow and the award and amount of attorney fees. I disagree with the trial court's judgment of joint and several liability concerning his attorney.

{¶ 29} "Civ.R. 37 vests courts with the authority to sanction parties and their attorneys for flouting the Rules of Civil Procedure and violating discovery orders[;] * * * joint and several liability is one method by which a court may impose sanctions." *Bellamy*, 188 Ohio App.3d 76, 2010-Ohio-2724, 934 N.E.2d 403, ¶ 21 [*Bellamy I*].

{¶ 30} In *Bellamy I*, the Tenth District reviewed the imposition of sanctions against a law firm, pursuant to Civ.R. 37. Recognizing "how attorney-client relationships may sometimes break down," the Tenth District has stated that " '[i]t is fair to hold individuals accountable for their own conduct. A lawyer cannot always control the actions of a client, and it would be unfair to hold the lawyer accountable for them, unless it appeared that he or she had some responsibility for the client's recalcitrance.' " *Id.*, quoting *Inter-Trade, Inc. v. CNPQ-Conselho Nacional De Desenvolvimento Cientifico E Tecnologic*o, 761 A.2d 834, 839 (D.C.2000). The Tenth District continued:

> Keeping all practical, legal, and public-policy considerations in mind, the fact patterns of the federal cases that have imposed joint and several liability for sanctions have generally involved egregious conduct by attorneys. The imposition of joint and several liability can translate to being a harsh sanction but, if warranted, a wholly appropriate sanction. Thus, given the fact patterns reviewed by this court, it is our position that a trial

court must support the imposition of joint and several liability with detailed findings and analysis, which includes an apportionment of responsibility.

*Id.* at ¶ 22. The appellate court reversed the award of sanctions and remanded the case to the trial court for more complete findings as to the law firm's level of responsibility, if any, for the failure to produce the requested documents. After a hearing, the trial court assigned 25 percent of the responsibility to the law firm.

{¶ 31} Reviewing the law firm's appeal of the trial court's decision after remand, the Tenth District again reversed the award of sanctions against the law firm. It reasoned:

> In *Inter-Trade,* which this court relied upon in *Bellamy I,* the District of Columbia Court of Appeals reversed an award of sanctions against an attorney that was based upon the client's failure to attend a deposition. The court held that the client's failure, in and of itself, did not give rise to sanctions against the attorney. Rather, the court held that attorneys should be held accountable only for their own conduct. The court agreed that " ' "an award ought to be made against the attorney only when it is clear that discovery was unjustifiably opposed principally at his instigation." ' " *Inter-Trade* at 840, quoting *Crawford v. Am. Fedn. Of Govt. Emps.,* 576 F.Supp. 812, 815 (D.D.C.1983), quoting *Humphreys Exterminating Co., Inc. v. Poulter,* 62 F.R.D. 392 (D.Md.1974). * * * In *Inter-Trade,* the district court was not entitled to sanction counsel because it did not know whether the client had consulted with counsel in forming his position regarding attendance at his deposition.

"Rule 37 treats the client and his attorney separately." *Weisberg [v. Webster*, 749 F.2d [864,] 874 [(D.C.Cir.1984)]. "[A]n award of costs under Rule 37 against an attorney ought to be justified by reasons distinct from those justifying an award against the client." *Id.,* citing *Crawford.* Accordingly, neither a party's failure to comply with a discovery order nor the trial court's reasoning for imposing sanctions upon the party is sufficient to justify sanctions against the party's attorney. Rather, separate and distinct reasons must support sanctions against the attorney, and the court must explain those reasons. In *Weisberg* at 874, the D.C. Circuit explained that "[t]his requirement of findings to support an award of expenses against an attorney is prompted by the structure of Rule 37, by concerns for effective appellate review, and by concerns for the tension created in the attorney-client relationship when the attorney is subject to personal liability."

Addressing language in R.C. 2323.51 that is substantially similar to the language in Civ.R. 37(B)(2), this court has stated that, "in allowing for the imposition of sanctions against the client, counsel, or both, [R.C. 2323.51] provides a mechanism for the court to place the blame directly where the fault lies." *Estep v. Kasparian,* 79 Ohio App.3d 313, 317, 607 N.E.2d 109 (10th Dist.1992). The same reasoning applies to sanctions under Civ.R. 37(B)(2) and is consistent with the federal case law requiring highly culpable conduct by an attorney before a court may require the attorney to pay expenses. Therefore, we agree with Cooper & Elliott that a client's failure to comply with discovery orders is not, by itself, an

appropriate basis for ordering the attorney to pay expenses pursuant to Civ.R. 37(B)(2).

*Bellamy v. Montgomery*, 10th Dist. Franklin No. 11AP-1059, 2012-Ohio-4304, ¶ 12-14 (*Bellamy II*). The Tenth District concluded that the trial court applied the wrong legal standard when it awarded sanctions based on the firm's failure to ensure its client's compliance with the discovery order. *Id.* at ¶ 10. Applying the correct legal standard, the Tenth District found "no support for a finding that Cooper & Elliott engaged in highly culpable conduct that amounted to condonance of or participation in Bellamy's noncompliance with the trial court's discovery orders." *Id.* at ¶ 30.

{¶ 32} In this case, counsel was never put on notice, either in the motion for sanctions or at the hearing, that the trial court was considering sanctions against him personally. *Contrast Bellamy I*, 188 Ohio App.3d 76, 2010-Ohio-2724, 934 N.E.2d 403, at ¶ 6 (the trial court ordered an evidentiary hearing on the amount of expenses and "level of responsibility for them of Plaintiff and his counsel"). Moreover, the trial court found from the evidence that it was Barrow who had willfully failed to comply and that Barrow had refused to provide a log, refused to provide any pre-2013 emails, refused to review certain emails, refused to produce certain emails, and failed to respond to informal alternatives suggested by Living Word. There was no testimony that any of this was done at the attorney's direction or suggestion, as opposed to perhaps acting against his attorney's advice.

{¶ 33} Courts must also be mindful of the chilling effect that applying a sanction – even if permitted by a Rule – can have on forceful and diligent advocacy. *See Internatl. Union of Operating Engineers, Local 18 v. Laborers' Internatl. Union of N. America, Local*

*31*0, 8th Dist. Cuyahoga No. 104774, 2017-Ohio-1055, ¶ 25 (addressing a motion for attorney fees under Civ.R. 11.)

{¶ 34} I find nothing in the record to support a determination of "highly culpable conduct by the attorney that amounted to condonance or participation in a client's disobedience of a discovery order."   *See Bellamy II* at ¶ 30.   I would remand for the court to hear additional evidence and apply the correct legal standard concerning the attorney.


Copies sent to:

John R. Folkerth
Bryan J. Mahoney
Lisa A. Hesse
J. Steven Justice
Kevin A. Bowman
Hon. Richard Skelton