INTER–TRADE, INC.,
et al., Appellants,

v.

CNPQ–CONSELHO NACIONAL DE
DESENVOLVIMENTO CIENTIFI-
CO E TECNOLOGICO, Appellee.

Samuel Bailey, Jr., Donald L.
McClure, Appellants,

v.

CNPq–Conselho Nacional De
Desenvolvimento Cientifico
e Tecnologico, Appellee.

Nos. 97–CV–1149, 97–CV–1164.

District of Columbia Court of Appeals.

Argued Nov. 4, 1998.
Decided Oct. 26, 2000.

Lloyd D. Iglehart for appellants, Inter–Trade, Inc., Jose Mario Fontes, Sr., and Nadyr Fontes.

Philip L. Kellogg, with whom James L. Lyons, Washington, DC, was on the brief, for appellant Jose Mario Fontes, Jr.

Donald L. McClure, with whom Samuel Bailey, Jr., Washington, DC, was on the brief, for appellants, Donald L. McClure and Samuel Bailey, Jr.

Larry W. Thomas, Washington, DC, for appellee.

Before WAGNER, Chief Judge, and REID, Associate Judge, and GALLAGHER, Senior Judge.

WAGNER, Chief Judge:

This is an appeal from a judgment entered upon a jury verdict in favor of the plaintiff, CNPq–Conselho Nacional De Desenvolvimento Cientifico E Tecnologico (CNPq) (a Brazilian government controlled entity) on a complaint for fraud and breach of contract against Inter–Trade, Inc.-D.C. and Inter–Trade, Inc.-MD. (respectively District of Columbia and Maryland corporations), Interbanque, Inc. (a District of Columbia corporation), Stoneley Limited and Precision Consultants Limited (Hong Kong Corporations); and Adrian Ricardo Levinson, Jose Mario Fontes, Sr., Nadyr Cortese Fontes, and Jose Mario Fontes, Jr. individually. Although the case has a complicated procedural background, the principal issue on appeal is whether the trial court abused its discretion in imposing sanctions precluding appellants from testifying, calling witnesses or presenting documentary evidence, including evidence of net worth relevant to a claim for punitive damages against them. Samuel Bailey, Jr., Donald L. McClure, and their law firm, Bailey and McClure (Bailey/McClure), served as defense counsel for all appellants, except A. Levinson and R. Carruso in the trial court. They appeal from orders of the trial court imposing monetary sanctions upon them jointly and severally with Jose Mario Fontes, Sr. for their client's failure to attend a noticed deposition. They contend that the sanc-

tion was not warranted because the record failed to show that they advised their client in a manner which influenced the decision of their client, Fontes, Sr., to violate the court's discovery orders. We affirm as to Fontes, Sr., and reverse the decision as to Mrs. Fontes and Fontes, Jr. in appeal no. 97–CV–1149. We also reverse as to Bailey/McClure in appeal no. 97–CV–1164.

## I. Factual Background of the Litigation

On October 6, 1993, CNPq filed a complaint in Superior Court against appellants for fraud, conspiracy to defraud, and breach of contract involving three 1989 transactions with CNPq for the purchase of quartz powder, machinery for the recovery of vegetable fibers and silver oxide equipment. The complaint alleged that appellants defrauded CNPq of an amount in excess of $18,773,800 in connection with these transactions. These transactions can be described in brief as: (1) the acquisition by CNPq of quartz powder from Inter–Trade for $6,914,800 for the use and benefit of Companhia de Desenvolvimento Tecnologico (CODETEC), a Brazilian corporation; (2) the acquisition of equipment for the recovery of vegetable fibers from Stoneley for $6,570,000 for the use and benefit of Gretisa S/A Fabrica de Papel (Gretisa Papel), a Brazilian corporation; and (3) the acquisition by CNPq for Precision Consultants Limited (Precision) of equipment for making silver oxide electronic batteries, for the use and benefit of Powertech Industria e Comercio Ltda. (Powertech) for $5,280,000. According to CNPq's complaint, the goods sold in each of these transactions were not only fraudulently overpriced, but also were not of merchantable quality or fit for their intended purpose. The complaint alleged that Inter–Trade and Interbanque were owned and controlled by all the Fontes appellants; that Stoneley and Precision were owned or controlled by Fontes, Sr. and Fontes, Jr.; and Gretisa and Powertech were owned or controlled by Fontes, Sr. Liability was claimed against each of

the Fontes appellants individually on the grounds that they participated directly in the fraud and breach of the agreement and used the various corporations as their alter-egos to perpetrate fraud on CNPq.

Appellants, Inter–Trade, Interbanque, Stoneley, Precision, Levinson, and the Fonteses filed an answer denying the material allegations of the fraud and breach of contract claims.[1] They also pleaded accord and satisfaction with respect to the quartz powder transaction between Inter–Trade and CODETEC, and they counterclaimed for costs incurred in connection with the transaction in the amount of $1,050,000. They also pleaded that the breach of contract claim for the quartz powder was barred on the grounds of estoppel, the statute of frauds, and the statute of limitations. In their answer, appellants also asserted defenses of failure to state a claim under Super. Ct. Civ. R. 12(b)(6); failure to join indispensable parties; and lack of jurisdiction, having asserted their right to removal of the action to federal court. Appellants counterclaimed for $12,500,000 for fraud arising out of appellees' efforts to establish a contractual relationship between CNPq/CODETEC and Inter–Trade by use of a fraudulent invoice; for $2,500,000 for abuse of process related to appellee having obtained a temporary restraining order from a court which allegedly lacked jurisdiction; for $1,050,000 for principal, interest and cost for services rendered to CODETEC in support of the acquisition of the procurement of the quartz powder; and $15,000 for attorney fees plus interest and costs required to defend against CNPq's complaint in Maryland (for misuse of process). Inter–Trade counterclaimed for $3,500,000 transferred to CODETEC per the alleged accord and satisfaction for the quartz powder transaction. Stoneley counterclaimed for $6,570,000 related to the vegetable fibers transaction for funds expended for the procurement of the equipment, return of funds related to the

alleged accord and satisfaction, and gross profit. The total amount demanded by appellants related to the counterclaim was $15,015,000, plus costs and attorney's fees.

## II. *Pre-trial Discovery Orders and Imposition of Sanctions*

The issue on appeal arises out of sanctions imposed upon appellants for failure to make discovery. Specifically, CNPq filed a motion to compel Fontes, Sr. to appear at a deposition and to compel interrogatory responses and production of documents from Inter–Trade, Interbanque, Stonely, Precision and the Fonteses. On July 29, 1994, the trial court (Judge Richard Levie) issued Order # 4 which ordered, *inter alia*, that: (1) Fontes, Sr. appear for the taking of his deposition on August 23, 24, and 25, 1994 at 10:00 a.m. at the offices of CNPq's counsel; and (2) that appellants respond to interrogatories and requests for production of documents on or before August 12, 1994. The order provided that failure to comply with the order compelling the deposition and responses to discovery requests would result in sanctions "in the nature of barring Mr. Fontes, Sr. and/or other Defendants (excluding Mr. Levinson), as appropriate from presenting evidence in defense of any claims made by [CNPq] or in support of any affirmative defense or counterclaim." The court also requested CNPq to submit an itemization of costs incurred by reason of the failure of Fontes, Sr. to appear for a deposition on June 20 and gave Fontes, Sr. and his counsel until August 26, 1994 to submit any response related to the itemized costs. If defendant Fontes, Sr. failed to appear at the deposition or if the defendants failed to respond to certain discovery requests, then "evidentiary sanctions will be imposed in the nature of barring Mr. Fontes, Sr. and/or the other Defendants (excluding Mr. Levinson), as appropriate, from presenting evidence in defense of any claims made by Plaintiff or in support of

---

1. The trial court denied Inter–Trade–D.C.'s motion to dismiss for failure to join indispens-

able parties (Brazilian companies Gretisa and Powertech).

any affirmative defense or counterclaim...."

On September 22, 1994 Judge Levie issued Order # 5 which stated:

On August 10, 1994 the Defendants filed a Motion for Reconsideration of Order # 4, Request for Stay Pending Appeal and Request for Emergency Hearing. In the Court's absence Judge Rufus King, III presided over consideration of the Motion for Reconsideration. During a telephone conference call with counsel for the parties, Judge King indicated that he would not grant any stay from Defendants' compliance with Order # 4, but he did suggest some ways in which the Defendants could comply with Order # 4 and still preserve Defendants' claims of confidentiality.[2]

Apparently no Defendant had any uncertainty about the effect of Judge King's ruling, because no further relief was sought from Judge King or this Court. Instead, Defendants chose not to comply with Order # 4 in that Defendant Fontes, Sr. chose not to appear for his scheduled deposition and Defendants did not respond to the written discovery by August 12. It should be noted that nothing in Order # 4 or Judge King's resolution of the Motion for Reconsideration required any Defendant to abandon assertion of any appropriate privilege.

Defendants' violation of Order # 4 is not the first example of Defendants ignoring Court orders. In the course of attempting to remove this case to the United States District Court, apparently in reaction to an earlier order of this Court to respond to discovery and for Mr. Fontes, Sr. to appear for deposition, Defendant Fontes, Sr. was ordered by Magistrate Judge Kay to appear for deposition on June 20, 24 & 27, 1994.[3] Notwithstanding this Order and a denial of a motion for a stay of this order, Mr. Fontes, Sr. did not appear for his deposition as scheduled.

In the instant situation the Court made it clear regarding possible sanctions for non-compliance. Nevertheless, the Defendants chose to ignore the Order of the Court. In such circumstances, the Court cannot discern any reason for the non-compliance with its orders.

Judge Levie's Order # 5 precluded Fontes, Sr. from testifying in his own behalf in defense of any claims made by plaintiff or in support of any affirmative defense or counterclaim. The trial court further ordered that all defendants be barred from presenting any evidence that relates to the subject matter contained in Plaintiff's Interrogatories and Request for Production of Documents in their defense of any claim or in support of any affirmative defense or counterclaim.

### III. *Analysis*

Appellants argue that the trial court erred in imposing discovery sanctions which precluded them from presenting any evidence in support of their defenses and counterclaim. They contend generally that the trial court abused its discretion in failing to consider lesser sanctions and in imposing sanctions out of proportion to their discovery violations. They argue that although they did not give complete answers to three interrogatories and that Fontes, Sr. failed to appear for any of the depositions, the conduct was not so flagrant as to warrant discovery sanctions which precluded the presentation of any evidence in support of a defense.

Fontes, Jr. argues that the broad preclusion order is the functional equivalent of a default judgment and that the standards for the imposition and enforcement of such severe sanctions were not met in this case. He contends that the record does not sup-

---

2. Fontes, Sr. was under criminal investigation in Brazil for defrauding the government and later indicted. Throughout these proceedings he attempted to assert a Fifth Amendment privilege.

3. Fontes, Sr. attempted to have the case removed to Federal Court the day before he was to be deposed.

port a finding that he willfully failed to comply with a discovery order. He argues that, on the contrary, he appeared at a deposition as required by Order #6 and that the record does not show that he obstructed the deposition inappropriately. Fontes, Jr. further asserts that appellees obtained from the Fontes appellants virtually all of the requested discovery materials from his depositions in this case, his own testimony and the testimony of Fontes, Sr. and Mrs. Fontes before the Bankruptcy Court, and numerous documents produced in both cases. Thus, he contends, appellees suffered no prejudice as a result of any violations of discovery. Fontes, Jr. also argues that the trial court abused its discretion in refusing to lift or modify the order of Judge Levie under the circumstances. He contends that the sanctions imposed in effect amounted to a default judgment and were extreme in that there was no showing and no finding by the court that he willfully failed to respond to interrogatories and to document requests. The Fontes appellants contend that the trial court abused its discretion in imposing sanctions out of proportion to the gravity of the discovery violations.

In enforcing the order, the trial court precluded appellants from testifying, presenting witnesses, exhibits, deposition testimony, including counter-designations of depositions introduced by CNPq in its case, or evidence of net worth as related to a claim for punitive damages. CNPq argues that appellants' discovery violations were in flagrant disregard of the court's orders and that the trial court did not abuse its discretion in imposing and enforcing the orders. CNPq contends that the Fontes appellants did not suggest the possibility of lesser sanctions and never argued in the trial court lack of prejudice. Appellees contend that the sanctions imposed were within the trial court's sound discretion and authorized by Super. Ct. Civ. R. 37.

■ Under Super. Ct. Civ. R. 37, the trial court has broad discretion to impose sanctions for discovery violations.[4] *See Walker v. District of Columbia*, 656 A.2d 722, 727 (D.C.1995). In exercising its discretion under the rule, the court "must act in accordance with established standards, which include that ... the sanction should fit the offense." *Vincent v. Anderson*, 621 A.2d 367, 371 (D.C.1993) (citing *Nolan v. Nolan*, 568 A.2d 479, 487 (D.C.1990)) (other citations omitted). Further, in determining what constitutes severe circumstances which would warrant extreme sanctions, the court must determine whether the non-compliance resulted from willfulness and whether it prejudiced the other side. *Id.* (citing *Nolan*, 568 A.2d at 487). The trial court should consider, and the record should reflect, that the court has considered lesser sanctions. *Vernell v. Gould*, 495 A.2d 306, 311 (D.C.1985) (citing *Braxton v. Howard Univ.*, 472 A.2d 1363, 1366 (D.C.1984)).

■ We agree with appellants that the broad sanction order which precluded the

---

4. Super. Ct. Civ. R. 37 provides in pertinent part:
    (b) *Failure to comply with order.* ... (2) Sanctions by this Court. If a party ... fails to obey an order to provide or permit discovery ... the Court may make such orders in regard to the failure as are just, including among others the following: ...
    (B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence....

    ✽    ✽    ✽    ✽    ✽    ✽

    (d) *Failure of party to attend at own deposition or serve answers to interrogatories or respond to request for inspection.* If a party ... fails (1) to appear before the officer who is to take the deposition, after being served with a proper notice, or (2) to serve answers or objections to interrogatories submitted under Rule 33, after service of the interrogatories, or (3) to serve a written response to a request for inspection submitted under Rule 34, after proper service of the request, the Court on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under paragraphs (A), (B), and (C) of subdivision (b)(2) of this Rule.

presentation of any evidence in defense of the main claim or in support of the counterclaim is one of the most severe sanctions, which essentially "approaches a default judgment in its severity." *See Bonds v. District of Columbia*, 320 U.S.App.D.C. 138, 145, 93 F.3d 801, 808 (1996), *cert. denied*, 520 U.S. 1274, 117 S.Ct. 2453, 138 L.Ed.2d 211 (1997). At least as to Fontes, Jr. and Mrs. Fontes, the record does not support the imposition of such an extreme sanction. Unlike Fontes, Sr., Fontes, Jr. ultimately appeared for the noticed deposition. Although he was sanctioned for failure to respond to certain interrogatories and document requests, there was no finding in the trial court that he was in a position to produce the information and willfully failed to do so. It does not appear that the trial court considered precluding the presentation of evidence only on the issues upon which Fontes, Jr. or Mrs. Fontes failed to make discovery. On this record, it does not appear that the sanction against these two appellants was proportionate to the violations. Therefore, the broad preclusion order as to the two of them was an abuse of discretion.

■ Fontes, Sr. is not in as favorable a position. He repeatedly failed to comply with the court's orders specifically directed to him. He had a lengthy litigation record of failure to pay numerous court sanctions and orders to pay fees. He failed to appear for scheduled depositions, and the trial court determined that his refusal to appear for depositions and to comply with orders of discovery was willful. His demonstrated pattern of non-cooperation would support that finding. *See Chapman v. Norwind*, 653 A.2d 383 (D.C.1995) (affirming dismissal where plaintiffs' failure to produce requested documents and to appear for deposition supported finding of willfulness). The extreme sanction complained of here was preceded by lesser sanctions which were not successful in getting Fontes, Sr. to comply with the discovery requests. Therefore, we find no abuse of discretion in the trial court's order as to him.

## IV. *The Appeal of Bailey and McClure*

■ Appellants, Samuel Bailey, Jr. and Donald L. McClure, (appellants in Appeal No. 97–CV–1164), attorneys for appellant Fontes, Sr., argue that the motions judge erred in imposing upon them monetary sanctions for their client's failure to attend a deposition noticed for June 20, 1994. They contend that, absent a finding that they advised or instigated their client's non-appearance, there was no basis for monetary sanctions against them. They assert that the court's order acknowledged explicitly that it did not know whether Fontes, Sr.'s failure to appear was based in any way upon the advice of counsel. CNPq argues that Bailey and McClure failed to raise these issues in the trial court, and therefore, they should not be considered on appeal.

■ In Order # 4, Judge Levie imposed sanctions upon Fontes, Sr. for failure to attend a deposition scheduled for June 20, 1994. It imposed the sanctions upon Fontes, Sr. and his counsel, "jointly and severally," stating that "the Court does not know whether the failure [of Fontes] to appear for deposition was based solely, partly or not at all upon the advice of counsel." Thus, this initial order contained no basis for the imposition of sanctions under Rule 37 against the party's counsel—quite the contrary. When courts have assessed attorney's fees against counsel for a party for the latter's violation of discovery requirements under Rule 37, the attorney has had "a high degree of culpability." *Crawford v. American Fed'n of Gov't Employees*, 576 F.Supp. 812, 815 (D.D.C.1983). It is fair to hold individuals accountable for their own conduct. A lawyer can not always control the actions of a client, and it would be unfair to hold the lawyer accountable for them, unless it appeared that he or she had some responsibility for the client's recalcitrance. Therefore, we agree with the position adopted in *Crawford* from the District Court of Maryland in *Humphreys Exterminating Co. v. Poulter*, 62 F.R.D. 392 (D.Md.1974). That

position is that " 'an award ought to be made against the attorney only when it is clear that discovery was unjustifiably opposed principally at his instigation.' " *Crawford,* 576 F.Supp. at 815 (quoting *Humphreys,* 62 F.R.D. at 395).

In its initial order in this case, the trial court recognized that it had no reason to believe that the lawyers were responsible for the lack of cooperation of Fontes, Sr. In Order # 7, the trial court confirmed its prior order imposing the financial sanction upon the client and counsel.[5] Again, it pointed out that it did not know whether the client had consulted with counsel in forming his position, but nevertheless confirmed its sanctions order. Under these circumstances, we conclude that the trial court abused its discretion in imposing the obligation upon Bailey/McClure.[6]

For the foregoing reasons, we reverse and remand the case as to Fontes, Jr. and Mrs. Fontes for further proceedings consistent with this opinion. We reverse the orders imposing sanctions on Bailey/McClure with instructions to vacate those portions of the order imposing sanctions upon them. In all other respects, we affirm the decision of the trial court.

*So ordered.*

5. The prior orders allowed Fontes, Sr. and his counsel to respond to the earlier order by a certain date "solely ... to contest any specific amount of fees or costs sought by plaintiff." In other words, there was no opportunity for counsel to challenge the lack of foundation for imposing sanctions against counsel, which came without warning in Order # 4. Therefore, we reject CNPq's argument that Bailey/McClure's challenge should not be considered because it was raised for the first time on appeal.

6. In light of our disposition of this issue, we need not reach Bailey/McClure's due process argument.