*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 12-CV-1749

SHIRLEY BOLTON, *et al.*, APPELLANTS,

v.

CROWLEY, HOGE & FEIN, P.C., APPELLEES.

Appeal from the Superior Court
of the District of Columbia
(CAB-1938-10)

(Hon. Michael L. Rankin, Trial Judge)

(Argued September 16, 2014                    Decided February 19, 2015)

Linda Bolton, *pro se*, with whom Shirley A. Bolton and Vickie E. Neal, *pro se*, were on the brief, for appellants.

*Laura M.K. Hassler* and *Christopher G. Hoge*, with whom *Aaron L. Handleman* and *Elena Inga*, were on the brief, for appellees.

Before BLACKBURNE-RIGSBY and THOMPSON, *Associate Judges*, and REID, *Senior Judge*.

REID, *Senior Judge*:  This case relates to three proceedings:  (1) an underlying toxic tort class action in the State of Mississippi in which appellants, Shirley A. Bolton, Linda C. Bolton, and Vickie E. Neal ("appellants" or "the Bolton sisters"), were claimants; (2) appellants' arbitration claim, brought in the District of

Columbia, against appellee, Crowley, Hoge & Fein, P.C. ("CHF"), for legal malpractice; and (3) CHF's claim in the Superior Court of the District of Columbia against appellants for unpaid legal fees, as well as appellants' counterclaims in that action. Appellants challenge the Superior Court's (1) March 6, 2012, order granting in part CHF's motion for summary judgment with respect to certain of appellants' counterclaims, including breach of the fiduciary duty of loyalty;[1] (2) January 26, 2012, order granting CHF's motion for sanctions in the amount of $7,338.58; and (3) September 20, 2012, judgment entering a jury award against appellants in the amount of $152,973.00 for legal fees owed to CHF. We affirm the trial court's sanctions award, but we reverse the trial court's grant of summary judgment on appellants' breach of the fiduciary duty of loyalty counterclaim and remand that counterclaim for further proceedings. In addition, we affirm the jury's liability finding on the breach of contract claim, but we instruct the trial court to hold the jury's monetary award of attorneys' fees in abeyance until after the resolution of the breach of fiduciary duty counterclaim.

---

[1] The March 6, 2012, order confirmed an earlier dismissal of counterclaims regarding fraud, conversion, and abuse of process.

# FACTUAL SUMMARY

## *The Underlying Toxic Tort Litigation*

The record shows that the Bolton sisters grew up in Richton, Mississippi, in the 1960s and 1970s, near a wood processing facility where wood chips were treated with toxic chemicals. Persons residing nearby were exposed to the chemicals and suffered various illnesses, including cancer, sarcoidosis, and type II diabetes. Attorney Dana G. Kirk and the Kirk Law Firm of Houston, Texas ("Kirk"), filed a mass tort action in Mississippi against the Joslyn Manufacturing Company ("Joslyn") and the Powe Timber Company in December 2001. The Bolton sisters were included in the lawsuit with approximately 1300 other claimants. Unbeknownst to the Bolton sisters, Kirk brought in other law firms from Dallas, Texas to assist with the representation, including Collen A. Clark and the Schmidt & Clark Law Firm. Eventually, in January 2007, Mr. Clark negotiated a Memorandum of Understanding ("MOU") with attorneys who represented Joslyn; the MOU created an $11 million settlement fund and divided claimants into two classes – one consisting of those generally on track to be considered for a settlement

award, and the other composed of those whose claims were placed on a dismissal track.

The Bolton sisters were placed in the second class of claimants. Kirk sent different letters to claimants in the two classes. The February 2, 2007, letter that the Bolton sisters received did not mention the January MOU or the $11 million settlement fund, but simply advised that the defendants would soon file a motion for summary judgment "based upon the fact that we have no proof that you have an illness related to exposure to the toxic chemicals in the wood chips from the plant in Richton, MS." The letter also requested proof by February 28, 2007, of specified "illnesses/diseases," in order to prevent dismissal of their claims. Prior to February 28, 2007, the Bolton sisters wrote to Kirk, indicating that they had already submitted their medical records. Later, they sent additional documentation to Kirk.

Joslyn filed summary judgment motions against the Bolton sisters and others in mid-March 2007. Before the end of March 2007, the Bolton sisters and other claimants terminated Kirk's representation. Appellants hired other lawyers to negotiate a settlement on their behalf, but they did not oppose Joslyn's summary judgment motion. After they signed a settlement and release, gross settlement

funds of approximately $70,000 for each of the Bolton sisters were deposited in the Circuit Court of Jasper, Mississippi.

### *The Arbitration Malpractice Claim*

The Bolton sisters filed a *pro se* arbitration claim in the District of Columbia on January 28, 2008, against Kirk and other attorneys and law firms that handled the Mississippi toxic tort litigation. They alleged "professional negligence, ethical misconduct, breach of contract and breach of fiduciary duties." On March 3, 2009, they signed an engagement agreement with CHF to represent them in the arbitration proceeding. The agreement detailed payment terms for legal fees, costs and expenses. On March 11, 2010, the arbitrators issued a modified order finding that the Bolton sisters "cannot meet the proximate cause requirement imposed by Mississippi law in proving [legal] malpractice," that is, they "cannot demonstrate that, but for the alleged breach of duty allegedly committed by [Kirk and others] by entering into the MOU, [appellants] would not have suffered the economic injuries they claim." On March 2, 2010, CHF filed an attorneys' lien in the Jasper, Mississippi Circuit Court against the Bolton sisters' settlement funds, claiming

"unpaid attorneys' fees." By March 22, 2011, CHF's Jasper County lien for unpaid attorneys' fees was held to be invalid.

### *The Superior Court Litigation*

Soon after the failure of its Mississippi lien, CHF filed its Superior Court complaint for unpaid legal fees, in the amount of $137,046.45, on March 25, 2010. The Bolton sisters lodged an amended counterclaim on August 8, 2010, alleging five counts – breach of contract, professional negligence/malpractice, abuse of process, conversion, fraud, and breach of fiduciary duty of loyalty. In a short hearing on November 19, 2010, the Honorable Brook Hedge dismissed the fraud count on the ground that appellants failed to plead it with specificity. She also dismissed the abuse of process, conversion and fraud claims because she did "not think [that] on its face the complaint states [a] claim with respect to those three causes of action." The dismissal was without prejudice and Judge Hedge informed appellants that they could further amend their counterclaim with respect to these counts. The Bolton sisters did not seek to amend their amended counterclaim during the discovery process.

During the discovery and deposition phase of the trial court litigation, CHF filed a motion for sanctions and/or to compel depositions due to the failure of Shirley Bolton and Vickie Neal to appear for scheduled depositions. Judge Rankin granted the motion on January 26, 2012, and imposed a $7338.58 monetary sanction against appellants. After CHF filed its motion for summary judgment and appellants opposed it, Judge Rankin granted summary judgment, on March 6, 2012, in favor of CHF on all of the Bolton sisters' remaining counterclaim counts, except for the breach of contract count, and he reiterated the dismissal of the fraud, conversion, and abuse of process counterclaims because "no amendment was undertaken" after Judge Hedge dismissed these counterclaim counts without prejudice. The breach of contract claim proceeded to trial and resulted in a September 20, 2012, jury verdict against the Bolton sisters for unpaid attorneys' fees in the amount of $153,973.00 (with interest and costs). The trial court denied their post-verdict motion for a new trial on November 2, 2012, and they noticed an appeal.

**ANALYSIS**

*CHF's Motion for Summary Judgment*

*Standard of Review*

"A party is entitled to summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Steele v. Salb*, 93 A.3d 1277, 1281 (D.C. 2014) (internal quotation marks and citation omitted). "Whether summary judgment was properly granted is a question of law, and our review is therefore *de novo*." *Bradshaw v. District of Columbia*, 43 A.3d 318, 323 (D.C. 2012) (internal quotation marks and citation omitted). "We review the record in the light most favorable to the non-movant, and any doubt regarding the existence of a factual dispute is to be resolved against the movant." *Fogg v. Fidelity Nat'l Title Ins. Co.*, 89 A.3d 510, 514 (D.C. 2014) (citation omitted). That is, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in

his favor." *Rosen v. American Israel Pub. Affairs Comm., Inc.*, 41 A.3d 1250, 1255 (D.C. 2012) (internal quotation marks and citation omitted).

### *Breach of the Fiduciary Duty of Loyalty*

The Bolton sisters contend that the trial court erred and abused its discretion by dismissing their breach of the fiduciary duty of loyalty, and their professional negligence/malpractice counterclaims, in response to CHF's motion for summary judgment. They mainly argue that the trial court incorrectly applied the law with respect to the breach of the fiduciary duty of loyalty – incorrectly ruling that proof of causation is required. They assert that proof of causation is not essential when disgorgement of legal fees is sought as a remedy.

Before discussing the applicable legal principles governing our analysis of the trial court's order granting CHF's motion for summary judgment as to the Bolton sisters' breach of the fiduciary duty of loyalty counterclaim, we set forth the factual context for that counterclaim, in the light most favorable to the non-movants. In their counterclaim, the Bolton sisters alleged that CHF breached their fiduciary duty of loyalty by:

a. [T]aking legal action against them to unlawfully deprive them of their ability to collect the Mississippi settlement monies, to which [CHF was] not entitled, and by misrepresenting facts to the Jasper County, Mississippi Circuit Court in support of said action;
b. Concealing the fact that they had filed the [l]ien against [c]lients during their representation of the [c]lients;
c. Encouraging expert witnesses to increase their bills and charge the [c]lients more money than the experts initially intended to charge;
d. All other alleged adverse actions against the [c]lients incorporated in this [c]omplaint.

With respect to subparagraph (d), paragraphs 32 and 33 of the amended counterclaim allege facts implicitly showing a conflict of interest on the part of CHF – "the existence of the [l]ien has prevented the [Bolton sisters] from obtaining their damage settlement in the mass tort litigation" and "[CHF was] still representing the [Bolton sisters] at the time the [l]ien was filed."  The amended counterclaim contained a demand for compensatory and punitive damages.

Appellants' expert, George R. Clark, Esq., submitted a timely Rule 26 (b)(4) statement (referenced in the Bolton sisters' opposition to CHF's motion for summary judgment) on March 3, 2011; the statement explains that the "breach of fiduciary duty for conflict of interest means that [CHF] should disgorge all fees paid

to it by the [Bolton sisters]," and that "[t]he filing in Mississippi also was a breach of fiduciary duty because it disclosed confidences and secrets of the [Bolton sisters]. The opposition set forth a statement of disputed facts, including the Bolton sisters' allegation that CHF filed the lien on March 2, 2000, during its representation of the Bolton sisters, that is, before the termination of CHF during the last week of March in 2010. The opposition also relied on case law in asserting that "so long as the only remedy sought is disgorgement of fees (or in this case both disgorgement and a bar of collection of uncollected fees) no showing of causation is required."

The pretrial statement, which the Bolton sisters filed on May 29, 2012, asserted that the filing of CHF's action "in Mississippi . . . was a breach [of] fiduciary duty under DC Rules of Professional Conduct because it disclosed confidences and secrets . . . to the public [and to the defendants] . . . in the [a]rbitration [proceeding]." The pretrial statement also declared that because CHF's "billing statements provide documentary evidence that CHF was still purporting to represent [the Bolton sisters] at the same time CHF [was] suing them in two separate legal actions and jurisdictions, [the Bolton sisters] are entitled to disgorgement of fees paid to CHF for their breach of loyalty and breach of fiduciary duty. . . ."

This jurisdiction has addressed the fiduciary duty of loyalty in the corporate and partnership context[2] and in attorney discipline,[3] but not in a legal malpractice case based upon alleged attorney misconduct. However, in a case in which three clients sued their former attorney and law firm for breach of the fiduciary duty of loyalty and sought compensatory and punitive damages, as well as disgorgement of paid legal fees, the D.C. Circuit, citing *Griva*, n.2 *supra*, declared that "a basic fiduciary duty of an attorney is the duty of 'undivided loyalty,' which is breached when an attorney represents clients with conflicting interests." *Hendry v. Pelland*, 315 U.S. App. D.C. 297, 301, 73 F.3d 397, 401 (1996). The appellate court vacated the district court's judgment in favor of the lawyer and law firm because "clients

---

[2] *See Willens v. 2720 Wisconsin Ave. Coop. Ass'n, Inc.*, 844 A.2d 1126, 1136 (D.C. 2004) (board of directors of a cooperative owes a duty of loyalty to the cooperative); *Griva v. Davison*, 637 A.2d 830, 846-48 (D.C. 1994) ("a violation of the Code of Professional Responsibility. . . can constitute a breach of the attorney's common law fiduciary duty to the client"; summary judgment inappropriate because genuine issues of material fact had to be resolved before determining whether a law firm and law partner who represented a three-person family partnership and two of the individual family partners breached their fiduciary duty to the third family partner, due to a conflict of interest, by refusing to disclose family partnership records and files).

[3] *See In re Bernstein*, 774 A.2d 309, 315 (D.C. 2001) (an attorney owes a "fiduciary duty of loyalty, full disclosure and trustworthiness" to a client); *see also Herbin v. Hoeffel*, 806 A.2d 186, 197 (D.C. 2002) ("'attorney owes a fiduciary duty to [her] client and must serve the client's interest with the utmost loyalty and devotion'" (quoting *In re Gonzalez*, 773 A.2d 1026, 1031 (D.C. 2001)).

seeking disgorgement of legal fees for a breach of their attorney's fiduciary duty of loyalty need only prove that their attorney breached that duty, not that the breach injured them," and because "the clients . . . presented sufficient evidence for a jury to conclude that their attorney breached his duty of loyalty." *Id*. at 299, 73 F.3d at 399; *see also Bode & Grenier, L.L.P. v. Knight*, 821 F. Supp. 2d 57, 65 (D.C.C. 2011).

Here, in the absence of pertinent case law in this jurisdiction concerning legal malpractice and the tort of breach of fiduciary duty based on misconduct,[4] the trial court turned first to *Mills v. Cooter*, 647 A.2d 1118 (D.C. 1994), a case involving clients' law suit against their attorney based on professional negligence and breach of fiduciary duty; the breach of fiduciary duty claim rested on the same allegations

---

[4] Mallen and Smith explain the distinction between a breach of fiduciary duty based on a standard of care, and that based on a standard of conduct:

> The fiduciary obligations set a standard of 'conduct' analogous to the standard of 'care,' which pertains to the requisite skill, knowledge and diligence. Thus, the standard of care concerns negligence and the standard of conduct concerns a breach of loyalty or confidentiality.

RONALD E. MALLEN & JEFFREY M. SMITH, LEGAL MALPRACTICE, § 15.2, at 624-25 (2014 ed.).

as the negligence claim and sought the same relief. We noted that "our disposition of the claim of legal malpractice applies with equal force to the claim of breach of fiduciary duty."[5] *Id.* at 1120, n.6. This court further stated in *Mills* that the question presented was "whether [the attorney] violated the standard of care by declining to join [two individuals] in the [law]suit because he believed such action to be legally unwarranted, even though he had apprised his clients of his position early in the representation and the clients therefore had the opportunity to retain other counsel." *Id.* at 1123. Hence, the breach of fiduciary duty claim in *Mills* was based on a standard of care and not a standard of conduct.

The trial judge in this case next referenced a Mississippi case on which the Bolton sisters relied, *Crist v. Layaconno*, 65 So. 3d 837 (Miss. 2011). The judge

---

[5] As the court said in *North Am. Catholic Educ. Programming Found., Inc. v. Womble, Carlyle, Sandridge & Rice, PLLC*, 887 F. Supp. 2d 78, 83-84 (D.D.C. 2012): "The plaintiff's four causes of action are based on the same set of facts and seek identical relief . . . . Courts of the District of Columbia treat such 'breach' claims – when arising from the same circumstances and seeking the same relief as a malpractice claim – as duplicative." (citations omitted). Mallen and Smith assert that "allegations that constitute negligence, which do not implicate a duty of confidentiality to loyalty, and are merely duplicative of that cause of action do not support a cause of action for fiduciary breach. In other words, when the basis for a claim of fiduciary breach arises from the same facts and seeks the same relief as a negligence claim, such a claim becomes redundant and therefore it should be dismissed. A negligence claim, however, should not prevent a factually distinct fiduciary breach cause of action." MALLEN & SMITH, *supra*, § 15.2, at 626, 628.

emphasized the proximate cause language in *Crist*, and concluded, "Obviously, the Bolton[] [sisters'] claim and elected remedy required proof of a causal connection between the arbitration respondents' negotiation of the MOU and the Bolton[] [sisters'] claim of loss." In addition, the trial judge declared that there was "no evidence presented that supports any theory of conflict of interest or breach of the duty of loyalty" because "it is . . . undisputed that CHF's attorney notified the [Bolton sisters] through counsel of the lien notice" and because "undisputed is the material fact that when the lien notice was filed, the [Bolton sisters] had already repudiated the retainer agreement with CHF, and CHF's representation of [the Bolton sisters] under that agreement had concluded."

As do Mallen and Smith, *supra* n.4, *Crist* in discussing breach of fiduciary duty, articulated two types of legal malpractice allegations – "The law recognizes a clear distinction between allegations of legal malpractice based on negligence (sometimes called a breach of the standard of care) and those based on breach of fiduciary duty (sometimes called breach of the standard of conduct." 65 So. 3d at 842 (citing *Lane v. Alfonso Realty, Inc.*, 873 So. 2d 92, 98 (Miss. 2004)). Significantly, *Crist* recognized a difference in causation analysis depending on the type of action. As the court said, "proof of success in the underlying case is an

appropriate test for proximate cause in a negligence-based action because it ensures that attorneys are only held professionally liable where their failures to adhere to the standard of care actually impacted the plaintiff's interests in the case.[6] But an attorney's breach of his fiduciary duties to his client may cause injury entirely separate from the merits of the underlying case." *Id*. at 843. *Lane*, which *Crist* referenced, highlighted the distinction in proof essential to prevail in each type of fiduciary duty breach:

> To recover under the negligence theory of malpractice, the
> client must prove the existence of an attorney-client

---

[6] In count II of their amended complaint, the Bolton sisters alleged "professional negligence/malpractice" against CHF. They assert in their brief that the trial court erred by granting summary judgment in favor of CHF as to that count. On appeal, their argument centers on the trial court's refusal to permit the Bolton sisters' expert, Mr. Clark, to testify in the trial on their breach of contract claim due to the late submission of the supplemental Rule 26 (b)(4) statement regarding that testimony. They contend that the exclusion of the supplemental statement adversely impacted "their ability to defend against the [a]ppellees [b]reach of [c]ontract [c]laims and prosecute their breach of contract counterclaim." Significantly, appellants do not address the specific reasons the trial court gave for granting summary judgment on their professional negligence/malpractice claim, and at any rate, on this record we cannot say that the trial court erred in concluding that the Bolton sisters "have presented no disputed facts supported by evidence that would allow their professional negligence[/]malpractice claim[] to survive the motion for summary judgment." Nor can we say that, in the absence of Mr. Clark's supplemental Rule 26 (b)(4) statement, appellants satisfied the causation prong of this claim.

relationship, the acts constituting negligence, that the negligence proximately caused the injury, and the fact and extent of the injury. However, the legal malpractice alleged in this case is a violation of the standard of conduct, not breach of the standard of care. The elements of this cause of action are the same as other legal malpractice actions except, instead of proving negligence, the plaintiff must prove a violation of the attorney's fiduciary duty. *Id*. at 98-99 (internal quotation marks and citation omitted).[7]

In addition to the distinction between a fiduciary breach based on a standard of care and one based on misconduct, we are guided by the following principles. "An agent owes [his] principal a fiduciary duty and a duty of loyalty," and "[l]ike other agents, lawyers owe their clients a duty of loyalty and a duty of care." *Government of Rwanda v. Rwanda Working Grp.*, 227 F. Supp. 2d 45, 63, 64 (D.D.C. 2002), aff'd in part by *Government of Rwanda v. Johnson*, 366 U.S. App. D.C. 98, 102, 106, 409 F.3d 368, 372, 376 (D.C. Cir. 2005) (affirming judgment against appellee for breach of fiduciary duty). "A fiduciary relationship is founded upon trust or confidence reposed by one person in the integrity and fidelity of

---

[7] *Lane* declared that in contrast to the breach of a duty of care, "when the claim is for breach of the standard of conduct, . . . lack of expert testimony should not preclude the issue from being heard by a jury," and that "[w]here a legal malpractice claim is based solely on a breach of the standard of conduct, as opposed to a breach of a standard of care, proof of the violation of the fiduciary duty to disclose is sufficient to create a jury question. . . ." 873 So.2d at 99.

another." *Rwanda Working Grp.*, *supra*, 227 F. Supp. 2d at 64 (internal quotation marks and citation omitted). "The relation between attorney and client is a fiduciary relation of the very highest character, and binds the attorney to the most conscientious fidelity . . . ." *David Welch Co. v. Erskine & Tulley*, 203 Cal. App. 3d 884, 890 (1988) (internal quotation marks and citations omitted).

"Long before the Code of Professional Responsibility was adopted, and before the Rules of Professional Conduct were adopted, the common law recognized that a lawyer could not undertake representation adverse to a former client in a matter 'substantially related' to that in which the lawyer previously had served the client."[8] *Maritrans GP Inc. v. Pepper, Hamilton & Scheetz*, 602 A.2d 1277, 1284 (Pa. 1992). "The legal obligation of a lawyer to refrain from misuse of a client's confidences goes even further back, predating the ABA [American Bar Association] Canons of Professional Ethics promulgated in 1908." *Id*. at 1285 (citation omitted).

---

[8] *See also* District of Columbia Bar Rule 1.9 ("A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent."); *Berkeley Ltd. P'ship v. Arnold*, 118 F. Supp. 2d 668, 673 (D.D.C. 2000) (D.C. Bar R. 1.7 (b)(2) defines conflict of interest to include "'such representation that will be or is likely to be adversely affected by representation of another client'").

"The wrong is favoring the law firm's interests over the client's interests."   Mallen & Smith, *supra*, § 16:10, at 800.

On this record, we have doubts as to whether, before ruling on CHF's summary judgment motion and the Bolton sisters' opposition, the trial court considered the distinction between a breach of fiduciary duty based on a standard of care and breach of fiduciary duty based on alleged attorney conduct, and also whether the court correctly applied governing legal principles concerning breach based on conduct.   The trial court was faced with multiple issues prior to its March 6, 2012, ruling on CHF's motion – including discovery matters and disputes, the fee dispute between the parties, malpractice negligence, and breach of the fiduciary duty of loyalty.   Understandably, some of these matters were rather complex, and in the press of advancing the case, the court may not have addressed the summary judgment motion with a full appreciation of applicable legal principles.

At a hearing on October 4, 2011, Shirley Bolton asserted that Mr. Hoge "breached his [fiduciary] duty of loyalty to the [Bolton sisters]."   The court recognized that there might be facts in dispute related to Ms. Bolton's assertion.   In addition, the court stated, undoubtedly because of the lack of guiding case law in this

jurisdiction, "I don't know how to separate the fiduciary breach from the . . . breach of a lawyer['s] duty to a client," and the court mused that the matter presented "just different theories of negligence." The court stated that it would "have to look at that in more depth." We cannot tell from this record whether the court concluded that mere notice of the Mississippi lien filing to the Bolton's then-current attorney resolved the Bolton sisters' breach of the fiduciary duty of loyalty claim based on a standard of conduct. Nor is it evident that there were no material factual disputes between the parties, such as whether CHF filed its Mississippi lien before or after the Bolton sisters terminated the firm's services, or that, as the trial court put it, "[t]here is no evidence presented that supports any theory of conflict of interest or breach of the duty of loyalty." Therefore, we vacate the trial court's summary judgment order as it pertains to the counterclaim of breach of the fiduciary duty of loyalty, and we remand the case for further proceedings pertaining to that counterclaim.[9]

---

[9] We see no basis for revisiting either Judge Hedge's dismissal of appellants' abuse of process counterclaim, or Judge Rankin's reiteration of the dismissal. Although appellants discussed the abuse of process counterclaim in their appellate brief, they did not advance an argument concerning the basis for Judge Hedge's dismissal. Moreover, even assuming that an issue relating to that count is properly before us, we do not believe that the record reflects evidence that satisfies all of the elements of abuse of process. *See Wood v. Neuman*, 979 A.2d 64, 77 (D.C. 2009) ("The tort of abuse of process lies where the legal system has been used to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could

(continued…)

### *Breach of Contract Jury Award to CHF*

In addition to arguing that the evidence was insufficient to sustain the verdict against them, the Bolton sisters claim that the trial court made several errors during the course of the trial on CHF's breach of contract count and their breach of contract counterclaim.

### *Alleged Instructional Errors*

The Bolton sisters primarily contend that the trial court erred by failing to give the jury a mitigation of damages instruction, and by misinterpreting the contingency fee provision of the engagement agreement and failing to give the jury an instruction regarding the ambiguity of the contingency fee contract provision.[10]   On the

---

 (…continued)
not legally and regularly be required to do.") (internal quotation marks and citation omitted); *Epps v. Voegel*, 454 A.2d 320, 324 (D.C. 1982) ("a party's ulterior motive does not make the issuance of process actionable; in addition to ulterior motive, one must allege and prove that there has been a perversion of the judicial process") (internal quotation marks and citation omitted).

[10] The Bolton sisters also suggest that the trial court erred by giving a joint
(continued…)

mitigation issue, the Bolton sisters maintained at trial that if they had known about CHF's bills, they would have terminated the representation and they would have represented themselves. They appear to assert that because CHF did not withdraw from representing them when the firm did not receive payments, CHF failed to mitigate the firm's damages. The record reveals that the parties discussed the Bolton sisters' request for a mitigation of damages instruction, but the trial court declined to give it due to lack of a duty to mitigate because there was no "clear repudiation" of the contract by the sisters.

---

(…continued)

and several liability jury instruction and they seem to indicate that they did not see the jury verdict form until after the verdict. They also argue that because the trial court failed to "include [an instruction relating to] accommodation for damages[,] [a]ppellants suffered as a result of payments not credited and failure of the [a]ppellees to send bills and then suing them." However, appellants do not develop these assertions with legal arguments, nor do they cite case law showing error on the part of the trial court. Moreover, the trial court instructed the jury that, "your finding one defendant liable or not liable should have no effect on your decision about the liability of any other defendant," and that "[i]f you should find that not all of the defendants are liable to the plaintiff, then your verdicts should be in favor of the plaintiff and against only those defendants you found liable." Counsel for the Bolton sisters raised the sisters' concern about "language dealing with joint liability" before the jury concluded its deliberations. As counsel put it, "they don't like the language 'jointly liable.'" But, the jury verdict form specifically posed three separate questions – one for each sister – regarding liability, and the form indicated if the answer to each question was "yes," i.e., that each sister materially breached the contract, then the fourth question was "how much do the defendants together owe?" The verdict form further instructed the jury about the next step if they found separate liability.

"The doctrine of avoidable consequences, also known as the duty to mitigate damages, bars recovery for losses suffered by a non-breaching party that could have been avoided by reasonable effort and without risk of substantial loss or injury." *Crough v. Department of Gen. Servs. of the District of Columbia*, 572 A.2d 457, 466 (D.C. 1990) (citation omitted). "The burden of proving that the losses could have been avoided rests with the breaching party." *Id*. at 467 (citations omitted). "It is not necessary for the plaintiff to take steps to avoid losses, even though the defendant has actually committed a breach, so long as the breaching party has not definitely repudiated the contract and continues to assure the plaintiff that performance will take place." 11-57 CORBIN ON CONTRACTS, § 57.11 (Matthew Bender & Co. 2014).

Here, the record reveals no definite repudiation of the CHF contract by any of the Bolton sisters until their written termination letter was sent to CHF during the last week of March 2010. Hence, we conclude that the trial court did not abuse its discretion by failing to give a mitigation of damages instruction.

We are not persuaded by the Bolton sisters' argument that the contingency fee provision of their contract was ambiguous and required the trial court to give an instruction concerning its meaning. They argue that the court admitted its confusion about the provision.[11] However, our reading of the transcript shows that the trial court was not confused by the contingency fee provision but by a question that had been posed to Linda Bolton at the breach of contract trial by counsel for the defendants. After asking Ms. Bolton to read the contingency fee provision, counsel inquired, "Now based upon your reading of the document, did you ever form a belief that – that Mr. Hoge would be able to take from the arbitration award not only a percentage but also his fees and expenses?" Counsel for CHF objected and the trial court stated, "The question is confusing to me." The trial judge called both counsel to the bench and stated, in part, "[T]his is clearly an issue of contract interpretation[,] [a]nd it's not ambiguous." As the bench conversation unfolded, the judge asked the parties to focus on the question that had been posed to Ms. Bolton and then said to counsel for the Bolton sisters, "So what is the question that you are asking?" Counsel replied that he could "rephrase the question." The judge reiterated that "it [meaning the original question] confused me [and] I really can't imagine that [the

---

[11] The Bolton sisters argued that since they did not recover any money "as a result of [CHF's] representation . . ., no fees are owed by the [a]ppellants."

jury] won't be confused by it." Counsel for the Bolton sisters responded, "I have another way that I can do it." In short, the trial court was not confused about the contingency fee provision, but about the original question about the provision that defense counsel posed to Ms. Bolton.

At any rate, we agree with the trial court's statement that read in the context of the first paragraph of the engagement agreement which concerned the hourly rates for attorneys and other law firm personnel and monthly billings, the contingency fee provision is not ambiguous. The provision begins with the words, "In addition," that is, it states, "In addition [to the provisions of the first paragraph], you agree to pay a contingency fee of 16.5% of all amounts recovered on your behalf, prior to deduction of fees, costs and expenses, pursuant to settlement or litigation." The engagement agreement reduced Mr. Hoge's normal fee of $350 per hour to $175 an hour, but provided that if the Bolton sisters were given a monetary award, either through settlement or through prevailing in the arbitration litigation, CHF would receive as a fee, 16.5% of the gross amount of the award. In short, the record reveals that the trial court was not confused by the contingency fee provision, and there was no need for a jury instruction to interpret the provision because it was not ambiguous. *See Burbridge v. Howard Univ.*, 305 A.2d 245, 247 (D.C. 1973)

("[contracts] are not rendered ambiguous by the mere fact that the parties do not agree upon their proper construction") (internal quotation marks and citations omitted).

### *Other Arguments Regarding Conduct of the Trial*

The Bolton sisters make several other arguments about the trial judge's conduct of the breach of contract trial, none of which requires reversal of the breach of contract judgment. They maintain that the trial judge abused his discretion because he "act[ed] in an arbitrary or unreasonable way that result[ed] in unfairly denying [them] an important right or cause[d] an unjust result." For example, they contend that the trial judge "disallowed key exhibits," "disallow[ed] witnesses to testify on [their] behalf," precluded the introduction of evidence regarding CHF's Mississippi lien, and denied their motion for a directed verdict after CHF admitted "that they failed to keep the [a]ppellants informed."

Under our guiding legal principles, we see no basis for concluding that the trial court abused its discretion in its conduct of the breach of contract trial. "The trial judge has the responsibility of managing the conduct of a trial." *Greenwood v.*

*United States*, 659 A.2d 825, 828 (D.C. 1995) (citing *Williams v. United States*, 228 A.2d 846, 848 (D.C. 1967)) (internal quotation marks omitted); *see also Quercia v. United States*, 289 U.S. 466, 469 (1933) ("the judge is not a mere moderator, but is the governor of the trial for the purpose of assuring proper conduct and of determining questions of law") (citation omitted); *Wong v. Smith*, 131 S. Ct. 10, 12 (2010) ("a trial judge has 'discretion' to 'comment upon the evidence,' to call the jury's 'attention to parts of it which he thinks important,' and to 'express his opinion upon the facts'") (citations omitted). Moreover, "[t]he admissibility of evidence is a decision committed to the trial court's discretion." *Williams v. United States*, 77 A.3d 425, 431 (D.C. 2013) (citation omitted); *see also Steele v. D.C. Tiger Market*, 854 A.2d 175, 181 (D.C. 2004) ("The admission or exclusion of expert testimony is committed to the informed discretion of the trial judge, whose ruling . . . 'should be sustained unless it is manifestly erroneous.'") (citations omitted). Many of the Bolton sisters' complaints about the trial judge's conduct of the trial relate to discovery and evidentiary rulings that concerned counterclaim counts that had been dismissed prior to trial on the breach of contract claim (for example, the breach of the fiduciary duty of loyalty counterclaim count discussed earlier in this opinion); hence, the trial judge did not abuse his discretion in declaring that some of the evidence the Bolton sisters sought to introduce at trial was not relevant to the matter

being tried before the jury. Furthermore, we cannot say on this record that the trial court abused its broad discretion pertaining to any discovery matters that "significantly affected [the Bolton sisters'] ability to present [their] claims." *Kreuzer v. George Washington Univ.*, 896 A.2d 238, 249 (D.C. 2006); *see also Futrell v. Department of Labor Fed. Credit Union*, 816 A.2d 793, 809 (D.C. 2003). Nor can we say that the court abused its discretion by denying the Bolton sisters' September 18, 2012, motion for a directed verdict after the presentation of CHF's main case. *See Howard Univ. v. Best*, 484 A.2d 958, 966 (D.C. 1984) ("A directed verdict is appropriate only when the evidence is so clear that reasonable men could reach but one conclusion.") (citation omitted); *see also Scott v. James*, 731 A.2d 399, 403 (D.C. 1999) ("a directed verdict is proper when the jury has 'no evidentiary foundation on which to predicate intelligent deliberation and reach a reliable verdict.'") (citations omitted). By the end of CHF's main case, the evidence did not show that reasonable persons could only reach a conclusion in favor of the Bolton sisters. Indeed, the jury ultimately concluded that CHF had prevailed on its claim for attorneys' fees and on this record, we are satisfied that there was sufficient evidence to support the jury verdict on CHF's breach of contract complaint.[12]

---

[12] Nevertheless, further proceedings relating to the breach of the fiduciary duty of loyalty counterclaim may involve some evidence excluded from the breach

(continued…)

In addition to contentions about the trial court's conduct of the breach of contract trial, the Bolton sisters assert that the judge showed bias toward them by making "intemperate remarks to [them] in a raised voice in the presence of the jury and ma[king] improper negative comments regarding their testimony as they were testifying." Examination of the trial transcripts reveals that there was some tension between the trial judge and Shirley Bolton. The tension seems to have begun after the trial judge granted CHF's motion for sanctions and following the trial court's denial of the Bolton sisters' recusal motion and their motion to overturn the court's summary judgment ruling.[13] Some of the tension carried over into the trial when

_____

(…continued)

of contract trial that would be admissible as to that counterclaim. In addition, the breach of fiduciary duty counterclaim proceedings may ultimately impact the jury's monetary award of legal fees, given the Bolton sisters' assertion, through Mr. Clark, that they are entitled to some disgorgement of legal fees. For this reason, while we affirm the jury's liability finding on the breach of contract claim in the interest of judicial economy, on remand, we instruct the trial court to hold the jury's award of attorneys' fees in abeyance until after resolution of the breach of fiduciary duty counterclaim.

[13] The trial court considered the Bolton sisters' motions on June 5, 2012. Shirley Bolton explained that the recusal motion was filed because "my sisters and I believe we need to have procedural fairness, and we don't believe we have had procedural fairness." She cited as an example of procedural unfairness the imposition of the discovery sanction when non-compliance was due to illness. The judge declared that he was "not going to recuse because I made a decision you don't

(continued…)

Shirley Bolton gave her testimony in response to Mr. Hoge's questions. The trial judge became impatient with what he described as Ms. Bolton's "long narratives" and "nonresponsive answers." Outside of the presence of the jury, the judge told counsel for Ms. Bolton, "I would venture to say that 90-95 percent of the answers that [Ms. Bolton] has given in cross-examination have been narratives that were nonresponsive to the question," and therefore, "redirect examination would be meaningless."

"A fair trial requires an impartial decision maker, whether it be the judge or the jury." *In re J.A.*, 601 A.2d 69, 74 (D.C. 1991) (citation omitted). Although in this case there clearly was some tension between Shirley Bolton and the trial judge, that alone may not be construed as unfairness or judicial bias. "[T]he bias or prejudice must be personal in nature and have its source beyond the four corners of the courtroom." *Mayers v. Mayers*, 908 A.2d 1182, 1190-91 (D.C. 2006) (internal quotation marks and citations omitted). Not only must the bias have an

---

(…continued)
like." Toward the end of the June 5 session, the frustration of both Shirley Bolton and the judge manifested itself as Ms. Bolton asserted that the judge was "obviously biased" and the judge in turn informed Ms. Bolton that if she participated in the trial, it was going to be "with respect" or she was "not going to participate and [would] find [herself] outside of [the] courtroom."

extrajudicial origin, but it must "result in an opinion on the merits on some basis other than what the judge learned from participation in the case." *Id.* at 1191 (quoting *In re Bell*, 373 A.2d 232, 233 (D.C. 1977)) (internal quotation marks omitted). From the Bolton sisters' brief, it is by no means clear that any judicial bias occurred in the case. They assert that they filed the recusal motion "due to a[n] inequitable amount of adverse rulings against the appellants and no adverse rulings [] against the plaintiffs." In particular, they single out the sanctions order and the dismissal of counts in their counterclaim. They reference no extrajudicial conduct on the part of the judge. Nor do they discuss their affidavits or claim to have filed the requisite affidavit in support of their recusal motion. *See York v. United States*, 785 A.2d 651, 654 (D.C. 2001) (Super. Ct. Civ. "[R.] 63-I (b) requires a party alleging judicial bias to file, along with a certificate of good faith, an affidavit asserting the factual basis for the claim.") (citation omitted); *see also Flax v. Schertler*, 935 A.2d 1091, 1108 (D.C. 2007) ("no hint or appearance of partiality in [judge's] rulings" in denying many of appellant's motions). In short, we see no basis for reversing the trial court's denial of their recusal motion.

### *The Discovery Sanction and the Motion For Judgment As A Matter of Law*

The Bolton sisters challenge the trial court's imposition of a monetary sanction against them. "Under Super. Ct. Civ. R. 37, the trial court has broad discretion to impose sanctions for discovery violations." *Inter-Trade, Inc. v. CNPQ-Conselho Nacional de Desenvolvimento Cientifico E Tecnologico*, 761 A.2d. 834, 838 (D.C. 2000) (citation omitted). "We disturb a discovery sanction on appeal only if the trial judge has abused his or her discretion by imposing a penalty too strict or unnecessary under the circumstances." *Roe v. Doe*, 73 A.3d 132, 135 (D.C. 2013) (internal quotation marks and citation omitted). "[I]n determining what constitutes severe circumstances which would warrant extreme sanctions, the court must determine whether the non-compliance resulted from willfulness and whether it prejudiced the other side." *Inter-Trade, Inc., supra*, 761 A.2d at 838 (citation omitted). The record regarding CHF's motion for sanctions and the Bolton sisters' opposition is extensive and need not be repeated here in detail. The trial court held a motions hearing on October 4, 2011, during which it heard argument by the parties for and against the motion, and the parties' appellate court briefs set forth their respective arguments. In essence, CHF filed the motion because of the failure of two of the sisters to appear for noticed depositions on at

least three occasions, and the Bolton sisters claimed that the failure to appear was due to illness or advice of counsel. The trial court "concluded that a sanction is warranted but not a drastic sanction" or even "a midlevel sanction" such as preventing the Bolton sisters from going forward with counterclaim counts. Rather the court imposed what it called "the lowest sanction," that is, reasonable costs. Hence, it did not make a specific finding of "willfulness" on the part of the Bolton sisters. The trial court entered an order against the Bolton sisters on January 26, 2012, imposing sanctions in the amount of $7,338.58. After examining the record relating to sanctions, we are satisfied that the trial court imposed an appropriate low-level sanction and did not abuse its discretion by imposing a penalty that was too strict or unnecessary under the circumstances.

Finally, the Bolton sisters contend that the trial court improperly denied their motion for judgment as a matter of law and for a new trial. We reverse the denial of a motion for judgment as a matter of law notwithstanding the verdict "only if no reasonable juror, viewing the evidence in the light most favorable to the prevailing party, could have reached the verdict in that party's favor." *Giordano v. Sherwood*, 968 A.2d 494, 497 (D.C. 2009) (internal quotation marks and citation omitted). "[A] trial court's decision to grant or deny a motion for a new trial based on the

excessiveness of the [jury] verdict will not be reversed unless an abuse of discretion is shown." *Davis v. Abbuhl*, 461 A.2d 473, 475 (D.C. 1983) (citations omitted). The trial court is in the best position to determine whether a jury's verdict resulted from prejudice. *Id*. at 476. On this record, we are not convinced by the arguments advanced by the Bolton sisters in support of their motions. There was credible evidence on which the jury could conclude that CHF was entitled to judgment on the breach of contract claim and we discern no evidence that shows the jury's verdict resulted from prejudice.

Accordingly, for the foregoing reasons, we affirm the trial court's sanctions award, but we reverse the trial court's grant of summary judgment on appellants' breach of the fiduciary duty of loyalty counterclaim and remand that counterclaim for further proceedings. In addition, we affirm the jury's liability finding on the breach of contract claim, but we instruct the trial court to hold the jury's monetary award of attorneys' fees in abeyance until after the resolution of the breach of fiduciary duty counterclaim.

*So ordered*.